## DEMPSEY *v.* THE STATE.

1. No disposition of personal property held under a conditional purchase is a punishable offence under the act of September 28, 1883, except by selling or encumbering the property, the title of the act not being sufficiently comprehensive to embrace any other mode of disposition.
2. As the constitution requires the trial of all criminal cases to be in the county where the crime was committed, the provision in the

act above referred to which subjects the offender to be tried in the county of his residence is unconstitutional as applied to cases in which it affirmatively appears that the offence was committed in some other county.  But in other cases, as the fact of residence in a particular county would warrant the inference, nothing to the contrary appearing, that any act done by the accused was done in that county, there is no necessary conflict with the constitution.

3. Where the vendor expressly gives the conditional vendee permission to sell the property on condition that the proceeds shall be paid to him, failure to comply with the condition will not render criminal a sale of the property made under such permission.

4. An indictment charging the accused with fraudulently selling "one bay horse" is not supported by evidence that the property sold was a "Texas pony," without any evidence whatever touching the color or sex of the animal.  But where, from the prisoner's statement, together with the evidence for the State, it can fairly be inferred that the Texas pony was a bay horse, there could be a conviction, so far as this element of the case is concerned.

October 8, 1894.

Indictment for selling and disposing of personal property held under conditional sale.   Before Judge MILNER. Catoosa superior court.   February term, 1894.

W. E. MANN and R. J. & J. McCAMY, for plaintiff in error.   A. W. FITE, solicitor-general, *contra.*

LUMPKIN, Justice.

1. On September 28th, 1883, the General Assembly passed an act "to make penal the selling or encumbering personal property held under a conditional purchase, and to provide a penalty for the same." In the first section of that act it is declared that "no person holding personal property under a conditional purchase and sale, where, by the terms of said purchase, the title to said property is retained by the vendor, until paid for, shall be permitted to sell, dispose of or encumber said property with the view or intent to defraud or defeat said vendor's rights, or where such selling, disposing of or encumbering of said property tends to the injury of said vendor, unless the same be done by the consent or approval of said vendor." The next section of the act

makes penal a violation of the provisions of the first section, and provides for the punishment of the same. See Acts of 1882–3, pp. 111, 112.

A casual inspection will be sufficient to show that the title of the act is not sufficiently broad or comprehensive to include any disposition of personal property held under a conditional purchase, except *selling* or *encumbering* the same. Consequently, so much of the body of the act as makes criminal any other disposition of personal property so held, is in plain violation of that provision of the constitution which declares that no law shall pass which "contains matter different from what is expressed in the title thereof." Code, §5067. Therefore, it was error to charge: "If you believe from the evidence that the defendant sold *or disposed of* the horse without the consent of the vendor, or if the selling *or disposing of* the horse tended to the injury of the said vendor, then the defendant would be guilty, unless the same be done by the consent or approval of the vendor"; —the error consisting in the use of the words italicized. In the present case the evidence failed entirely to show either a sale or an encumbrance of the property in question. Only by reason of the above erroneous charge were the jury authorized to find the accused guilty. Therefore, the conviction cannot be sustained, and a new trial is ordered.

2. The fourth section of the act confers upon the superior and county courts of the county where the offender resides, jurisdiction to try cases arising under it. But as the constitution distinctly provides that all criminal cases shall be tried in the county where the crime was committed, except in cases of a change of *venue* (Code, §5172), it is manifest that the act in question, as applied to cases in which it affirmatively appears that the offense was committed in some county other than that of the residence of the accused, is unconstitutional. In cases

where this fact does not appear, the act is not necessarily violative of that paragraph of the constitution embodied in the section of the code last cited. If the offense is committed in the county where the accused does reside, there is no constitutional difficulty in applying the act. Therefore, if it is shown that the accused resides in a particular county and did an act which, by the provisions of this law, was penal, and nothing more appears, the inference that the offense was committed in the county of his residence would be warranted. We do not mean to hold generally that proof of the corpus delicti, and residence of the accused in a given county, would be sufficient to show that the crime was committed in that county; but we are of the opinion that, under the terms of the act now under consideration, it was the intention of the legislature to raise a presumption, in the absence of evidence to the contrary, that a sale or encumbrance forbidden by the act was made in the county where the accused resided, and put upon him the burden of showing the contrary. It might often happen that the State would be able to prove that the accused was no longer in possession of the property, and by supplementing this fact with other competent evidence, satisfactorily establish the conclusion that an unlawful sale had been made, without being able to show precisely where the sale actually took place. On the other hand, it would never be very difficult for the accused to escape conviction in the county of his residence by showing that he parted with the possession of the property in another county; and, in so doing, it would by no means be necessary for him to concede the criminality of the act. It is quite probable that some such consideration as this influenced the legislative mind in making the above mentioned provision as to jurisdiction. Within the limits we have indicated, we think the act constitutional and capable of enforcement; and

to this extent, the will of the legislature should be given effect.

3. In order to render penal the sale or encumbrance by the vendee of property held by him under a conditional purchase, such sale or encumbrance must be made without the consent or approval of the vendor. If the latter gives to the former a conditional permission to sell or encumber the property, a sale or encumbrance made by virtue of this permission would not be criminal, even though the condition attached to such permission should be violated or not complied with. There must be an absence of all permission. Criminal laws must be strictly construed, and we are therefore constrained to hold that even a conditional assent on the part of the vendor—it being at least some permission—will prevent the sale from being rendered criminal by a non-compliance with the condition upon which such assent was granted. A subsequent violation of the condition is only a breach of contract, and will not relate back so as to make the original qualified permission an absolute nullity.

4. The 4th head-note needs no elaboration.

*Judgment reversed.*