PALMER *v.* YOUNG.

1. Where by the terms of a mortgage a power is conferred upon the mortgagee to sell the mortgaged property in satisfaction of the debt secured thereby, such stipulation does not impose upon the mortgagee such a special personal trust as that the sale thereunder could only be conducted by himself in person. The conduct of such a sale is a purely ministerial act, does not in any manner affect the real execution of the power, and may be performed by the mortgagee through the instrumentality of an auctioneer or any similar agent.

2. While, as a general rule, no trustee can purchase trust property at his own sale, yet if such mortgagee, under such a mortgage, at a sale of the mortgaged property in the execution of the power, himself becomes the purchaser, the sale, if made fairly and without fraud, is not void, but only voidable at the election of the mortgagor to redeem at any time before final judgment of eviction; and this is true although the power of sale does not, in terms, confer upon the mortgagee the power to purchase the mortgaged property at a sale made in pursuance thereof.

May 13, 1895. Brought forward from the last term.

Ejectment. Before E. A. HAWKINS, judge *pro hac vice.* Montgomery superior court. April term, 1894.

E. A. SMITH, for plaintiff in error.

J. E. WOOTEN and J. H. MARTIN, *contra.*

ATKINSON, Justice.

To secure the payment of a debt to them, Palmer executed a mortgage to Ellis, Young & Co., by means of which he created a lien upon the premises in dispute in their favor for the amount of the debt. In the mortgage

was a power of sale conferred upon the mortgagees, but there was no express provision authorizing them to become purchasers at the sale of the mortgaged property. Upon maturity of the debt, it remaining unpaid, they advertised and exposed the property for sale in accordance with the terms and stipulations of the power contained in the mortgage deed. At the sale neither of the mortgagees were present, but it was conducted by the sheriff of the county, who acted in the capacity of auctioneer, and at the sale the property was bid off by a third person, for the benefit of the mortgagees, and not on his own behalf; and he subsequently, at the request of the mortgagees, conveyed to John R. Young, who was himself an individual member of the partnership of Ellis, Young & Co. The mortgagees, by virtue of the power, conveyed to the purchaser who bought for them at the sale, and he in turn conveyed to John R. Young. Young brought an action of ejectment against the mortgagor, introduced in evidence the deeds executed in pursuance of the sale under the power contained in the mortgage, and upon the trial recovered a verdict against the mortgagor. A motion for a new trial was made, and two questions arise for consideration in this case.

1. The first question is, whether Ellis, Young & Co., being empowered to sell this property, could delegate that authority to some person other than themselves. We think that their actual physical presence at the sale was not essential to its validity. While the partnership, who were the mortgagees, occupied in a certain sense the position of a trustee with respect to this property, we do not think that, with respect to the mere conduct of the sale, the trust imposed was of such a special, personal character as that the sale could only be conducted by the mortgagees in person. The mere conduct of the sale is at best a purely ministerial act. It involves the exercise of none of those elements of discretion and

personal confidence which ordinarily make imperative
the personal execution of a special trust, and if the sale
be conducted by such ministerial officer, and the mort-
gagee thereafter ratify the sale, there being no omission
to give due notice of the time and place of sale as re-
quired by the terms of the mortgage, we know of no
reason why this should not be a good execution of this
power; indeed, it has been so held in courts of last re-
sort in many of the States of the Union.   In the case
of Dunton *et al. v.* Sharp, decided by the Supreme Court
of Mississippi, April 17th, 1893, and reported in 12th
Southern Reporter, p. 800, it was held that the personal
attendance of the trustee at the sale under the deed of
trust was not necessary, and that he could act through
others in advertising and auctioneering the land, it being
sufficient if this was done with his approval and sanction.
In 70 Ills. p. 604, it was decided that where a sale was
conducted by an attorney for the mortgagee in his ab-
sence, and the mortgagee subsequently ratified the sale
by making the deed, the sale was not void.   To the
proposition that it is not necessary that the sale be con-
ducted personally by the mortgagee, or that he be pres-
ent thereat, see Boone on Mortgages, section 219, citing
Fogarty *v.* Sawyer, 23 Cal. 570; Parker *v.* Banks, 79
N. C. 480; Hubbard *v.* Jarrell, 23 Md. 66; Watson *v.*
Sherman, 84 Ills. 263; see also Jones on Mortgages, §1861.
Even if this be an irregularity, it is not a matter of such
vital consequence as would avoid the sale.  If voidable
by reason thereof, the remedy was for the mortgagor to
avail himself of his equity of redemption.

2. The next question which we come to consider is,
whether or not the mortgagees, at their own sale, could
legally purchase the mortgaged property, and, if not, to
what extent a want of power in the mortgagees to pur-
chase would affect the validity of the sale.   There is
considerable conflict of authority upon this question,

some of the courts holding that a mortgagee under such a power can legally purchase the mortgaged property, and one of the best considered cases, viz: Howard *v.* Davis, 6 Texas, 174, assigns as a reason why a mortgagee should have the power to purchase at such a sale, the following: "A mortgagee is a trustee, but in a qualified sense. He does not hold for the benefit of others, but for himself. He is a *cestui que trust* as well as trustee. He has an interest in the property. It is pledged expressly to secure his claim, and were he deprived of the power to purchase, he might suffer a great loss by its sale at a low price. He has an interest that the bid shall amount to his incumbrance, and that the property be not sacrificed, to the injury as well of the mortgagor as the defeat of his own claim, as this may be the only fund for the discharge of his debt. Sales at foreclosures, whether under a power or by decree, are open and public, and are made after long notice, and it is to the interest of the mortgagor that the mortgagee shall enter into the competition at the sale." While in other of the States the doctrine prevails, that a purchase by a mortgagee of the mortgaged property under such a power, is *ipso facto* voidable. In some States such a sale may be avoided by a disaffirmance thereof by the mortgagor within a reasonable time. The rule may be stated to be, in such cases, that an unauthorized purchase by the mortgagee arms a mortgagor, or his successors in title, with an option to have the sale declared invalid and the right of redemption established. It would seem that such a purchase is good for all purposes, except that it does not bar the mortgagor's equity of redemption. The mortgagor may elect to abide the sale, or at his election he may redeem; and while in the execution of the power there might be such fraud as would of itself avoid the sale, and which would authorize a court of equity to set it aside without reference to the equity of

redemption still remaining in the mortgagor, yet if the sale be fairly made and free from fraud, it cannot be attacked and set aside as a void sale simply because the mortgagee was himself the purchaser thereat. Besides, according to the authorities, there is less strictness in applying the rule to cases of a mortgagee purchasing at his own sale under the power, than there is in the case of a trustee purchasing. A mortgagee in such a case is not merely a trustee, but he is also a *cestui que trust*, and as such has an interest to protect. See Jones on Mortgages, vol. 2, §1881. The question as to whether this sale was fairly conducted was found favorably to the plaintiff in this case, who holds under the mortgagees. The legal title passed to him, subject to be divested by the mortgagor paying to him the amount of the debt to secure which the mortgaged premises were pledged. When he brought the action in ejectment, he had an unimpeached legal title derived from the mortgagor under a sale of his property, which, up to that time, had been acquiesced in by the latter. The mortgagor had the right at any time to disaffirm this sale, and avail himself of his equity of redemption. This he might have done by filing an equitable plea, tendering the debt due, at any time before final judgment of eviction against him; but not then disaffirming the sale by the mortgagee, he is concluded by this verdict; and the sale being, as we have before said, in all respects fair and regular, and in accordance with the power conferred by the terms of the mortgage deed, the court properly declined to set aside the verdict and award a new trial.

Let the judgment of the court below be    *Affirmed.*