### 5210.   PRESSLEY et al. v. McLANAHAN BROTHERS.

Where a conditional bill of sale confers upon the vendor the power to sell the property on default of payment of the purchase-price, after notice to the vendee, and, on such default and after due notice, he sells the property as agent of the vendee, and himself becomes the purchaser, the sale to himself, if free from fraud, is not void, but only voidable, at the option of the vendee.   Before such a sale can be avoided, the vendee must tender payment of the debt secured by the property in question.

DECIDED JANUARY 20, 1914.   REHEARING DENIED FEBRUARY 4, 1914.

Complaint; from city court of Elberton—Judge Grogan.   August 16, 1913.

*W. D. Tutt,* for plaintiffs.   *Ward & Payne,* for defendants.

RUSSELL, C. J.   McLanahan Brothers sued Pressley and others for a sum alleged to be due upon a promissory note given for the purchase-price of two mules, title to which was retained by Mc-Lanahan Brothers under the provisions of the contract.   It was also stipulated in the note that the possession of the purchasers should be unlawful after the maturity of the debt, and the vendors, or their agents, might take possession of the property without due process of law, and might sell it at public outcry, after ten days notice in writing of the time and place of sale had been given to the purchasers, and that the proceeds of the sale should be applied to the payment of the debt, and if there should be any surplus in excess of the debt, it should be paid to the makers of the instrument; but it was also provided that if at such public sale the property did not bring enough to pay the debt, the makers would be liable for any balance remaining unpaid.   The note was for $512.50 and payments aggregating $100 were made upon it.   There being default as to the balance due, McLanahan Brothers, under the power conferred in the instrument, took possession of the mules, gave the vendees, Pressley and others, the required notice in writing, and, under the authority to sell conferred by the contract, exposed the property to public sale, and the vendors themselves purchased the mules for the sum of $275, which was entered as a credit upon the note, and they sued the defendants for $170.13, the unpaid balance of the note.   The defendants pleaded that the contract had been rescinded by the plaintiffs' retaking possession of the mules, and a consequent failure of consideration.   The defendants, in their answer, insisted that they were not only not liable upon the note, but that the plaintiffs, having rescinded the contract by retaking the mules, were indebted to the defendants in the sum of $25, as the difference between the sum of $75, which was alleged to be the reasonable hire of the mules while they were in the possession of the defendants, and the sum of $100 which had been paid to the plaintiffs by the defendants, and for which the defendants, because of the plaintiffs' rescission of the contract, had received no consideration other than the use of the mules.   On the conclusion of the evidence the judge directed a verdict in favor of the plaintiffs for the unpaid balance appearing from the note; and exception is taken to this judgment.

The court did not err in directing the verdict.   If the plaintiffs

had retaken the mules and retained possession without exercising the power of sale conferred by the vendees, and had disposed of them at a private sale, or otherwise converted them to their own use, it is apparent that this would have evidenced a rescission. But the plaintiffs promptly availed themselves of the power of sale conferred upon them by the makers of the note. It is undisputed that they gave the defendants the ten-days notice in writing. The sale was open and public. It was within the power of the defendants to buy the mules, or to procure others to do so for them if there was any danger of the property being sold below its value. There can be no question that the fact that the plaintiffs retook possession of the mules and had them sold would not amount to a rescission, if any person other than the plaintiffs had purchased the mules. In other words, the sale could not be attacked if a stranger, wholly disconnected with McLanahan Brothers, had bought the mules for himself. But it is insisted that since one of the members of the firm of McLanahan Brothers purchased the mules, the sale was void, and, as a result, that the retaking of possession by McLanahan Brothers amounted to a rescission. Conceding, without more, that the mules were purchased by McLanahan Brothers, we can not, under the evidence in the record, hold that the sale was void. It is true that in conducting the sale, under the power conferred by the instrument in this case, McLanahan Brothers became the agents of the makers of the note; and it is a general rule, well recognized, that one who conducts a sale in any fiduciary capacity, can not both sell and buy at his own sale. He can not be at once the representative of another and the representative of his own interests. But it is well settled that in such a case as that now before us the sale is not absolutely void. The holder of the note— the vendor and the original owner of the personal property—who has reserved title thereto as security for his debt has himself interests to be protected. It may be that the property to be sold is the only property to which he can look for payment of his debt, for his debtor may be wholly insolvent. He should not be required to stand idly by, being prohibited to bid, and see chattels of value purchased by others far below their worth, and the only security for the debt be thus absolutely destroyed and dissipated. That the sale is voidable and not void is a rule which we think has been wisely established in the interest of both the vendor and the vendee in

such transactions as that now before us, where there is no evidence of fraud on the part of the agent exercising the power of sale. Of course, if there were any circumstances sufficient to indicate fraud, the sale would be wholly void, but where the power of sale is exercised in good faith, the mere purchase of the property by the original vendor does not of itself avoid his purchase. If the debtor thinks the sale is injurious to his interest, it may be avoided by the tender upon his part, within a reasonable time and before the rights of bona fide purchasers intervene, of the sum due by him under the contract. Here there is no evidence either of fraud or of tender. See *Palmer* v. *Young,* 96 *Ga.* 246 (2), 248 (22 S. E. 928).

*Judgment affirmed.*

### ON MOTION FOR REHEARING.

RUSSELL, C. J. It appears that Pressley and others bought two mules from McLanahan Brothers, giving to McLanahan Brothers a note for the purchase-price, in which title was reserved in the venders until payment of the note. The note contained also a stipulation that if it was not paid at maturity, McLanahan Brothers were empowered to retake the mules without legal process; and, after giving the makers ten-days notice in writing, to expose the mules for sale; and that if the mules were sold for more than the amount of the debt, the excess should be paid to the makers, and if they did not bring the amount of the debt, the makers would still be bound for any balance of the purchase-price remaining unpaid after the proceeds of the sale had been credited thereon. The terms of the writing are entirely unambiguous, there being no escape from their perfectly palpable meaning. The makers of the note paid $100 after its maturity, and this amount was credited on the note. Probably assuming that the remainder of the note would be paid, McLanahan Brothers did not at that time avail themselves of their option to retake the property. After the notes became due, however, and after more than two months had elapsed, no further payments being made, they sent for the mules, which were surrendered to them without protest, and they proceeded to give the ten-days notice in writing to the makers of the note; it is not disputed that this notice was given. Upon the day fixed for the sale the mules were exposed for sale, and one of the McLanahans, being the highest bidder, became the purchaser of the mules; which we will assume thus passed into the possession of McLanahan Brothers.

24

The amount of McLanahan's bid was then credited upon the note, and the pending action was brought to recover the unpaid balance by suit upon the note.

The insistence of counsel for the plaintiffs in error, in the motion for rehearing, is that the sale was voidable; and with this contention we agree. It was voidable at the option of the maker of the note, if, within a reasonable time after the sale, he tendered the entire amount of the unpaid purchase-price due upon the note prior to the sale and at the time of the sale. There is no evidence that any tender to this effect was ever made or attempted. It was specifically stated in our decision in this case that the sale was not void. But the effect is the same in any event, because the sale was voidable only if certain conditions were complied with, by the debtor, and it appears that no effort was made to comply with those conditions. The judgment rendered by the trial court did nothing more nor less than give effect to the terms of the unambiguous conditional contract in writing. The case of *Juchter* v. *Boehm,* 63 *Ga.* 72, is not in point. The point there decided was that a plea of utter failure of consideration was not available, where the plaintiff, in violation of his agreement, foreclosed the mortgage given to secure the debt, and caused the total loss of the goods by reason of the seizure and sale. The question in this case is whether the contract is enforceable, and whether, if enforced, one who has reserved title under a power of sale to a personal chattel can be permitted to purchase at his own sale; and upon this point we held, in the original opinion, that, as a person can not at once be the agent for both the buyer and the seller, the debtor, as equitable owner of the property, if damaged by the sale, has the right to have it voided. But he can not do this so as to defeat the collection of the debt, and he is only permitted to do so by paying the debt. As pointed out in the decision, any other rule would be unfair to the holder of the note, because to prevent him from bidding at the sale would perhaps permit the only property of his insolvent debtor from which he could ever collect his debt to be sold for a song, and a bargain fall into the hands of a chance purchaser without benefitting either the creditor or the debtor.        *Rehearing denied.*