## McCOY v FAULKENBERG

Ohio Appeals, 1st Dist, Hamilton Co

No 4874.   Decided Oct 28, 1935

Leo J. Brumleve, Jr., Cincinnati, and Benjamin P. Pink, Cincinnati, for plaintiff in error.

August A. Rendigs, Jr., Cincinnati, and Wm. H. Fry, Cincinnati, for defendant in error.

## OPINION

By MATTHEWS, J.

The plaintiff was the husband of the decedent and was also a guest in this automobile at the time of the accident, sitting beside his wife. His testimony is the most favorable to the plaintiff on the subject of the conduct of the defendant and the manner in which he operated the automobile. We, therefore, deem it sufficient for the purpose of disposing of this proceeding to quote from his testimony on this subject. His testimony was:

"A. We all sat around in a circle, I played the Ukelele and we all sang, drank a gin highball, just spent a nice evening there.

Q. How many gin highballs did you drink?

A. I had two.

Q. Do you remember how many Mr. Faulkenberg had?

A. No.

Q. Dd the ladies drink?

A. Yes.

* * *

Q. I want you to state to the members of the jury again whether, in your opinion, Mr. Faulkenberg was under the influence of intoxicating liquor when you started to drive home with him?

A. To a certain extent.

Q. To a certain extent?

A. Yes.

Q. And that was known to Mrs. McCoy?

A. Yes.

* * *

Q. Now, Mr. McCoy, I want you to tell the court and jury just what occurred there at this little restaurant and between all of you? What did you do?

A. We danced and had a couple of glasses of beer and I used to do a little entertaining and I got out with the Ukelele and sang a song in the beer garden. We went back to our table, finished our beer and left. We were only there about an hour.

Q. Then about what time would you

say you left this restaurant and beer garden?

A. About twelve o'clock.

Q. Now, while you were at the restaurant and beer garden did Mrs. Faulkenberg or Mr. Faulkenberg have any beer?

A. Yes, we all did."

While it was alleged in the amended petition that the defendant was intoxicated, the quoted evidence was as strong a statement as was made by any witness, and as a result the claim was abandoned in this court, the plaintiff in error stating in his brief that "There was no such claim made during the trial because the evidence failed to support such allegation." We find no such clear waiver in the trial court.

We continue with Mr. McCoy's testimony:

"Q. Now, then, after you got to the point a square or two as you say, beyond Edwards Road, and he was going thirty-five to forty what course was he pursuing? Was he going straight ahead?

A. No, he was cutting in and out and around all the machines.

Q. Now, Mr. McCoy what did anyone in that car do or say when this course of conduct started on behalf of Emmett Faulkenberg?

A. My wife was the first one to ask him not to drive so fast.

Q. What did she say?

A. She says 'Emmett, don't drive so fast; we are in no particular hurry'. We were going nowhere but home.

Q. What did he say in response to that, if anything?

A. He says 'Oh, I brought you out here, I will get you home; don't worry about that'.

Q. Mr. McCoy, I want you to tell the court and jury after that remark how he continued to drive?

A. He continued in the same way only faster. I would say picked up another ten miles an hour, approximately forty-five, maybe fifty, and still continued to cut around the machines.

Q. What, if anything, was said to him by anyone in that car when that occurred?

A. Yes, my wife told him again if he wouldn't quit driving so fast and reckless to let us out at the next loading platform and we would take the street car.

Q. Did he say anything in response to that?

A. No, he never said anything but his wife told him, 'Now, Emmett, don't be smart, there is no need driving so fast and being in such a hurry'.

Q. Then what was the next thing occurred, if anything, as you remember?

A. The next thing occurred was the crash and I was conscious long enough just before the crash to know the machine was turning, then I don't remember anything."

The defendant and his wife who sat beside him on the front seat denied that the automobile was operated in the manner stated by the plaintiff and denied that any such conversations as stated by plaintiff took place. The defendant's explanation of the accident was as follows:

"Q. I want you to tell the folks just what happened when you got to Vista Avenue or a little beyond?

A. When I came to Vista and I started to make the turn there is a turn right there and just as I was turning the corner I was suddenly blinded by lights. I swerved over to the curb, my wheels hit the curb, I lost control of the automobile, my rear wheels swung around; that is all I know.

Q. You were knocked unconscious?

A. Yes, sir.

* * *

Q. When was it you first saw this other automobile that you claim flashed lights in your eyes?

A. When I was coming down Madison Road going west, just about the time I hit the curb this other car was coming toward me. Just where he was or how far away he was I couldn't say. His lights were very bright. I swung over to get out from the glare of the lights and I hit the curb.

Q. In other words, what you want to tell us is you swung out to get out of the glare of the lights?

A. They were there all of a sudden. It is only natural you would swing out of the way, Mr. Pink."

The trial court, after reading §6308-6, GC, to the jury and defining "wilful" and "wanton" misconduct, then instructed the jury on the subject of the decedent's conduct as follows:

"There is some evidence in this case that the decedent Gertrude McCoy, knew that the defendant was under the influence of liquor to some extent when she got into his machine and continued to ride with him until the collision. On this point the court charges you if you should find by the greater weight of the evidence that the defendant was guilty of wilful and wanton misconduct and at the same time find that the

decedent, Gertrude McCoy, was negligent in getting into the automobile and riding with the defendant, if you should find she was in fact negligent that negligence in and of itself should not defeat a recovery by plaintiff against the defendant unless you further find that such negligence on the part of plaintiff's decedent amounted to wilful and wanton misconduct. On this issue, that is, whether plaintiff's decedent was also guilty of wilful and wanton misconduct under the circumstances the defendant has the burden of proof by the greater weght of the evidence unless plaintiff's own negligence raises an inference or presumption that decedent was guilty of wilful or wanton misconduct, in which event the burden is upon the plaintiff to introduce evidence from which an inference or presumption of equal strength arises that she was not guilty of wilful or wanton misconduct under the circumstances."

It is claimed that there was no evidence of intoxication of the defendant and no evidence of contributory misconduct of decedent and, that, therefore, the court erred in submitting this issue of contributory misconduct to the jury.

The record also raises the issue of whether the decedent's death was caused by any wilful or wanton misconduct on the part of the defendant.

So far as we know there is no case in Ohio construing §6308-6, G.C. However, somewhat similar statutes in other states have been construed by the courts of those states and furnish a guide to a correct decision of this case.

The Connecticut statute exempts the operator from liability to the guest "unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." Construing this statute, the court in Bordonaro v Senk, 109 Conn., 428, 147 Atl., 136, said:

"Acts or conduct in reckless disregard of the rights of others is improper or wrongful conduct and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another.

"We define these terms in Menzie v Kalmonowitz, 107 Conn., 197, at page 199, 139 A. 698, 699: 'Wanton misconduct is more than negligence. more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct.' When we say that wanton misconduct is the equivalent of wilful misconduct, we do not intend to characterize these terms as equivalent of each other, but as equivalent in result. Wilful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, as we have shown, but, in their resultant, they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form of misconduct to like rules, and visits upon each a like liability. Gonier v Chase Companies, Inc., 97 Conn. 46, 115 A. 677, 19 A. L.R. 83.

"The charge dwells at unnecessary length upon the general law as to ordinary negligence. An action based upon wilful or wanton misconduct is apart from the action for negligent conduct. These have been often treated under the head of negligence actions, and sometimes by this court. The difference is one of kind, not merely of degree. Negligence does not have for its base either wilfulness or wantonness, while misconduct which is merely negligent is never either wilful or wanton. 45 C. J. 672, 674.

"All that is needful in the consideration of an action based upon wilful or wanton misconduct is a brief explanation of what an action for ordinary negligence consists of, so that it may be readily distinguishable from the action for wilful or wanton misconduct."

And, on the subject of contributory negligence in such a case, the court said:

"Error is predicated upon the charge that contributory negligence upon the plaintiff's part would constitute no defense to an action based upon the defendant's reckless disregard of the rights of others. The defense of contributory negligence is not available where injury is inflicted under conditions open to the charge of wilfulness or wantonness."

Such is the settled construction of the Connecticut statute. Grant v MacLelland, 109 Conn., 517, 147 Atl., 138; Silver v Silver, 108 Conn., 371, 143 Atl. 240. The constitutionality of the statute was sustained in the latter case, which was taken to the Supreme Court of the United States. See 280 U. S., 117.

The Iowa statute limits liability of the host to the guest to cases where the oper-.

ator is "under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." In Siesseger v Puth, 213 Iowa, 164, 239 NW, 46, the court construed this statute and at page 54 of 239 NW report said:

"* * * the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless', one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness', but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton', but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences'.
* * *
"As recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading, proof, or instruction of the court, in cases brought under this statute."

See also: McQuillan v Meyers, 241 NW, 442, construing the same statute similarly.

Even though a statute provides for liability for injury resulting "from the gross and wanton negligence of the operator" the court held in Stout v Gallemore, 138 Kan. 385, 26 P. (2d) 573, that it relieved "The operator * * * from liability to his guest resulting from negligence, as that term is distinguished from wantonness." See also Murrell v Janders, 44 P. (2d) 218, to the same effect.

Now does the evidence disclose wilful or wanton misconduct on the part of the defendant in the operation of the automobile?

The South Carolina statute made liability depend upon intention or needlessness, or reckless disregard of the rights of others. In Lee v Lott, 177 So., 92, it was held that this required more than gross negligence. The averments of negligence in that case were that the automobile steering apparatus was defective, and that it was driven at a speed of 45 miles per hour in violation of the statute. The conduct of the operator was stigmatized in the petition as "grossly, wilfully, and heedlessly negligent, having an utter disregard for the rights of others." At page 96, the court made this comment on these averments:

"Are the facts alleged more than negligence, more than gross negligence? Does the allegation of the petition with respect to the speed of the car constitute such an allegation as constitutes wilful misconduct, and in that sense more than gross negligence? In the case of Anderson v Colucci, 116 Conn. 67, 163 A. 610, 611, it was said: "The plaintiff had the legal status of a guest, and it was incumbent upon him to establish prima facie that the intestate in one of the ways alleged acted with heedless and reckless disregard of the rights of others.' It was held that the fact that the defendant was driving at a 'terrific' speed did not justify an inference that he was indifferent to the consequences which might result to his passengers from his conduct, or that he was guilty of wanton or wilful misconduct. In other words, the driving of an automobile in excess of a legal rate of speed, while it may be negligence per se, does not of itself constitute wilful and wanton misconduct such as would permit under the statute, here under consideration, a recovery for an injury proximately caused by such speed."

In Ascher v Friedman, Inc., et, 110 Conn., 1, 147 Atl., 263, the court analyzed the evidence, saying:

"As they were approaching the house, they were proceeding at a rate of 25 to 30 miles an hour, and the plaintiff protested that they were going too fast, but the driver paid no attention. The house was upon the left-hand side of the street with a driveway into the yard. The driver was proceeding to the left of the center of the street and started to enter the driveway without slackening her speed. The right wheels of the car mounted the curb to the right of the entrance, and in an endeavor to correct her course, the driver swung too far to the left, ploughed through a flower bed, and crashed into a bay window of the house about 25 feet from the curb. The trial court set aside the verdict in favor of the plaintiff on the ground that her case, taken in its most favorable aspect, disclosed nothing more than a case of ordinary negligence on the part of the driver of the car."

In our statute is found evidence of a studied avoidance of the use of any terms having the meaning of any degree of negligence. It is free of any uncertainty on that subject. It is not negligence that creates a liability. The operator's liability is expressly limited to wilful and wanton misconduct.

We are of the opinion that there was no substantial evidence that the defendant was intoxicated or under the influence of

alcohol, within the meaning of §12628-1, GC, when decedent entered the automobile with him or while they were proceeding along Madison Road, and that, therefore, the issue of decedent's conduct in that respect should not have been*submitted to the jury. Undoubtedly, the guest's action may, under certain circumstances, defeat a recovery under this statute. There is, however, a paucity of precedent on the general subject of the effect of contributory wilfulness in an action based on wilfulness as is shown by the annotation to the case of Spillers v Griffen, L.R.A. 1918 D, 1193 at 1195. However, it is unnecessary in this case to consider what the character of such misconduct must be to have that effect. All we hold is that there is no evidence of any such misconduct in this case.

This leaves the question of whether the defendant was guilty of wilful or wanton misconduct. Admittedly, the evidence did not tend to show that he was intoxicated or under the influence of alcohol to the extent of making the defendant guilty of ilful or wanton misconduct.

We are also of the opinion that the violation of a law is not necessarily wilful or wanton misconduct within the meaning of §6308-6, GC. Failure to use ordinary care in the operation of an automobile upon the public highways is a misdemeanor under §12603, GC. If the violation of this statute subjected the host to a liability to his guest, §6308-6, GC, would not change the existing rule, but it was manifestly intended to limit the liability. The character of the act is not determined by whether it violates a statute. Its character as wilful or wanton misconduct must be determined by whether the misconduct is a wilful disregard of the just rights or safety of others or of the consequences of action; or a wantonness that is the legal equivalent of wilfulness.

Now what else is there in the evidence? The defendant passed automobiles and in doing so naturally did not follow a straight course. That, it seems to us, is all the "zigzagging" the evidence shows. This took place in a well-lit street, 100 feet wide, between midnight and one o'clock in the*morning. The defendant and his wife were in the front seat and their evidence is uncontradicted that it was the glare of the approaching lights that caused him to swerve to the right to avoid the approaching automobile, thereby showing an attempt to avoid injury. When the decedent protested as to the manner in which the defendant was operating the automobile, he assured her that he would get her home safely. While the evidence is that the decedent told the defendant that if he wouldn't quit driving so fast and reckless he should let her get out, that immediately preceded the collision. There was no evidence that he either expressly or impliedly refused to comply with her request. That distinguishes this case from that of Berman v Berman, 110 Conn. 169.

We hold this evidence tends to show negligence and over-confidence, but not wilful or wanton misconduct.

The motion of the defendant for an instructed verdict should have been sustained. The errors of which the plaintiff in error complains were, therefore, not prejudicial.

For these reasons, the judgment is affirmed.

HAMILTON, J, concurs.

### CONCURRING OPINION

By ROSS, PJ.

I concur in the affirmance of the judgment of the Court of Common Pleas for the reason that the record presented in the bill of exceptions fails to show any evidence of wilful or wanton misconduct on the part of the defendant. The motions for an instructed verdict should have been granted. This conclusion renders unnecessary any further consideration of the case.