26302. WALLACE v. THE STATE.

DECIDED JUNE 16, 1937.

C. E. Anderson, for plaintiff in error.

D. A. Bragg, solicitor pro tem., contra.

GUERRY, J. "D. A. Bragg, sol. pro tem. of the city court of Millen, in the name and behalf of the citizens of Georgia," charged and accused H. Carl Wallace "with the offense of misdemeanor, . . for that the said H. Carl Wallace, on the 15th day of May, 1936, . . did . . unlawfully . . after having executed to W. E. Alwood a certain mortgage covering with other property therein named, a certain automobile, to wit, one 1931 model Chevrolet coach automobile, motor number 2785817, did sell and otherwise dispose of said automobile, before the payment of the mortgage debt, without the consent of and with intent then and there to defraud the mortgagee, and to the loss and damage of mortgagee in the sum of $70." Upon this accusation the defendant was convicted. He excepted to the overruling of his motion for new trial, which contains only the general grounds.

This accusation is based on the Code, § 67-9901, which declares: "If any person, after having made a mortgage deed to personal property, or bill of sale to secure debt, shall sell or otherwise dispose of said property or cause the same to be removed beyond the limits of the State before the payment of the mortgage debt or debt secured by bill of sale, without the consent of, and with intent to defraud, the mortgagee, and loss shall thereby be sustained by the holder of the mortgage or bill of sale, the offender shall be punished as for a misdemeanor." To sustain a conviction under this section the evidence must show that the defendant sold or otherwise disposed of the property after having made a

mortgage deed thereto, or bill of sale to secure a debt, and that (1) the sale was without the consent of the mortgagee or person holding the bill of sale to secure a debt, (2) was with the intent to defraud the mortgagee or person holding the bill of sale to secure a debt, and (3) that the mortgagee or holder of the bill of sale to secure a debt suffered loss thereby. *Morrison* v. *State,* 111 *Ga.* 642 (36 S. E. 902); *Reece* v. *State,* 5 *Ga. App.* 663 (63 S. E. 670); *Davis* v. *State,* 7 *Ga. App.* 332 (66 S. E. 960); *Thompson* v. *State,* 12 *Ga. App.* 201 (2) (76 S. E. 1072); *Farmer* v. *State,* 18 *Ga. App.* 307 (3) (89 S. E. 375); *White* v. *State,* 24 *Ga. App.* 74 (100 S. E. 39); *Dempsey* v. *State,* 94 *Ga.* 766 (22 S. E. 57). We have carefully read and considered the record before us, and are prepared to hold that the evidence was not sufficient to support the conviction, in that it did not clearly show that the sale was made without the consent of the prosecutor, or that there was any intent to defraud the prosecutor in the sale of the property. The first of the State's two principal witnesses was Thetus Lewis, the gist of whose testimony was that he purchased the automobile in question from the defendant, and that the defendant did not advise him that Alwood had a bill of sale thereon, but that he learned of the existence of the bill of sale before he finished paying the defendant for the car. Alwood, the other witness, to whom defendant had executed a bill of sale on the automobile (and upon whose testimony this conviction must rest), testified very clearly on direct examination that the defendant sold the automobile without his permission or consent and to his loss and damage of $70. However, on an examination of his testimony on cross-examination, and when considered as a whole, it appears that he did give his consent to the sale of the automobile to Lewis, at least impliedly so; and his testimony thus tends to rebut any inference of intent to defraud him on the part of the defendant, which might arise from the sale of the automobile on which there was an outstanding bill of sale to secure a debt. To illustrate, it appears from the evidence that the defendant was dealing in the sale of used cars, and that the car on which Alwood had a bill of sale to secure a debt was one among others that he was offering to the public for sale. The defendant entered into negotiations with Lewis for the sale of the automobile. During these negotiations Lewis offered him certain corn as part payment for the auto-

mobile, and it was testified that the defendant said he would see Alwood and see if he would take the corn, and, according to Alwood, the defendant did actually approach him and tell him of his negotiations with Lewis for the sale of the car, and asked him if he would take the corn offered, to which Alwood dissented, saying that he would rather have the money. Thereafter, according to Alwood, the defendant again had a conversation with him and told him that Lewis still wanted the car, and further told him about a certain government check that Lewis had. In this connection it appears that the government had issued a check for $30 to Lewis, and that Lewis had offered it to the defendant as part payment for the automobile. The defendant told Alwood that Lewis was giving him a note for $50 representing the balance due on the purchase-price of the car. Thereafter Alwood, Lewis, and the defendant went to the county agent's office to see about having this check assigned to Alwood, but found the county agent out. Alwood did testify that on this occasion the car was not mentioned, but only the check was discussed. He further testified: "I remember the first time that you [the defendant] approached me about selling Mr. Lewis this particular car, and I remember you asking me whether I could use the corn. . . I remember you coming back the second time and telling me that Mr. Lewis was still wanting the car, and about the government check; and I said for you to have him sign it over to me, and we went down there to get it, but the office was closed. . . I did finally say that I could use the government check as part payment. . . At the time this thirty-dollar payment, the government check, was given, Mr. Wallace owed us money. . . We did not care where Mr. Wallace got the money from, so long as we got our money." Thus it appears from Alwood's own testimony that he actually knew of the negotiations between the defendant and Lewis for the sale of the car; in fact he actually went with the defendant and Lewis to the office of the county agent in an effort to have the check assigned to him, although he testified that during that time the fact that he had a bill of sale on the car, or the car itself, was not mentioned, and thereafter he finally agreed to accept and did actually accept, as part payment on the note (secured by the bill of sale) between defendant and himself, a check drawn in favor of Lewis. He must necessarily have known that Lewis was not going to make the de-

fendant a present of the check; and since his testimony does not tend to show that he had been led to believe that Lewis owed the defendant money, except that which he would owe on the purchase of the car, he must necessarily have known that the defendant was going to sell the car to Lewis, and that Lewis was going to make this check a part payment on the purchase-price. He not only did not object, he co-operated and acquiesced in the transaction, and then accepted part of the fruits thereof. Perhaps he was fearful of ever getting his money from the defendant, and was willing, as he testified, to take any money presented by him regardless of its source, and in this way he was willing to let Lewis purchase the car from the defendant in order to get the $30. The prosecutor also knew the defendant was taking a note from Lewis for payment on the car. If this be true, and the evidence discloses as much, then Alwood will not be permitted to say that he did not consent to the sale. In respect to civil cases it has been held that "if a plaintiff relies on the testimony of a single witness, and the facts stated by that witness on cross-examination completely nullify an inference stated by the witness on direct examination, a nonsuit should be granted." *Wallis* v. *Watson,* 184 *Ga.* 38 (190 S. E. 360), and cit. We think this principle applies equally as well in a case like the present, though it be a criminal prosecution. We do not say that the evidence in the present case disclosed that Alwood expressly consented for defendant to sell the automobile; however, his conduct was manifestly permissive, and was rightfully taken as such by the defendant. In *Dempsey* v. *State,* supra, it was said: "There must be an absence of all permission." Under the circumstances the evidence does not indicate an intent on the part of the defendant to defraud the prosecutor, and his conviction must be set aside and a new trial granted.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*