**HOTTEL v READ**

Ohio Appeals, 9th Dist, Wayne Co

Decided December 18, 1940.

Critchfield, Critchfield & Critchfield, Wooster, for appellee.

Weimer & Miller, Wooster, and Power & Barton, for appellant.

## OPINION

By DOYLE, J.

The major questions involved in this appeal on questions of law from the Court of Common Pleas of Wayne County are, whether the evidence admitted on the trial is sufficient to sustain the verdict of the jury in favor of the plaintiff in an action based solely upon the claimed wanton misconduct of the defendant, and warranted the ruling of the court in overruling the defendant's motion for a new trial and entering judgment on the verdict.

The question is also presented as to whether the evidence adduced at the trial upon the subject of wanton misconduct was such as warranted the trial court in submitting that issue to the jury. Following the rendition of a verdict for the plaintiff, the court overruled a motion for a new trial and entered judgment on the verdict. From this judgment the present appeal has been taken.

The plaintiff in the trial court, the appellee here, one Bessie Hottel, while riding as a guest in an automobile owned and driven by the defendant, J. Harold Read (appellant), received severe personal injuries in a collision between the automobile in which she was riding as a guest and another car on the highway.. Her right to recover under the facts of this case can be only upon sufficient proof of wanton misconduct of the defendant in the operation of his car, and such wanton misconduct the proximate cause of the accident. See §6308-6 GC, which provides:

618

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

On the morning of February 24, 1938, the appellant, with three passengers, one of whom was the appellee, drove his automobile from his home near West Salem, into the city of Ashland, and from there onto state highway No. 42, which runs in a generally easterly and westerly direction, toward Mansfield, and in the general direction of Lima, in which latter city all were to attend a convention.

After the car had proceeded over the crest of a hill approximately five miles from Ashland, the defendant observed a passenger bus ahead of him, proceeding in the same direction down the hill. He then observed that the bus was proceeding at a very slow rate of speed, preparatory to stopping to pick up a passenger, and, after first attempting to slow his own car so that he could remain behind the bus, he discovered that the slippery condition of the pavement prevented him from so doing; and, to avoid a collision with the bus, he attempted to pass it by turning his car to the left on the three-lane highway. This movement caused his car to skid, and, while skidding, it collided with a car proceeding in the opposition direction. The accident occurred on the defendant's left side of the highway while his car was skidding sideways and out of control.

The evidence most favorable to the appellee showed that the highway was covered with a sheet of ice which made travel most difficult; that the appellant drove his car at a rate of speed of between 40 and 50 miles an hour; that other vehicles on the highway proceeded much slower, due to the icy condition of the highway; and that the appellant was familiar with the route and knew of the hill upon which the accident occurred.

The following is quoted from appellee's brief, and is fairly supported by evidence:

"Mr. Read was familiar with the road and with the hill on which the accident happened, but, nevertheless, knowing of a long, steep hill, knowing that he was traveling on clear sheet ice, he proceeded without slackening his speed along the road, over the crest of the hill and down the hill. Coming down the hill without slackening speed, Mr. Read then sees a bus ahead of him, with two wheels off the road on the berm, proceeding at a very slow speed. At that moment he attempts to avoid the inevitable crash. His car swerves across the road and into an automobile approaching from the opposite direction."

As heretofore stated, the foregoing recital depicts evidence most favorable to the plaintiff's case. There was evidence adduced by the defendant which tended to controvert some of it. However, on this appeal we concern ourselves only with the evidence most favorable to the plaintiff, and the quaere is—Is it sufficient to establish a situation such as warranted submission to the jury of the issue of wanton misconduct?

It should first be observed that this case contains none of the features of those cases of wanton misconduct where the physical condition and reckless conduct of the operator of a motor vehicle constitute the peril or impending danger. See Fisher v Faflik, 52 Oh Ap 69, at page 73, 3 N. E. (2d.) 62. Nor is it a case in which the guest-plaintiff has warned the defendant driver of an impending peril in the manner of his driving, and he in a reckless disregard of the rights of others continues on.

The tests to be applied to the instant case are: 1. Did the driver have actual knowledge of the peril? and

2. Possessed of that knowledge, did he thereafter exercise any care whatever, or did he continue on witnout care, in utter heedlessness of his guest's jeopardy. and with a knowing disregard of her safety?

The evidence disclosed a fairly uniform rate of speed over the road from the beginning of the trip, up and over the hill, to the position where the defendant first observed the bus slowing its speed. And it fails to disclose any evidence of skidding prior to going down the hill which was the scene of the accident.

The defendant's uncontradicted testimony was:

"Q. Now. you started to say when you were in the flat you saw another vehicle ahead of you; now will you locate this flat in reference to the top of the hill in question? A. Well, it was back I would say in the hollow between —there are only two or three little knobs along there, and when I saw this car ahead of me, didn't know it was a bus at the time, but it was proceeding over the crest of this hill probably 800 feet ahead of me.

"Q. What did you next observe? A. When I came up over the hill I saw the vehicle ahead of me part way down, probably half way down; I did not attempt to stop because I didn't know he was stopping. * * *

"Q. What happened next, now you saw this bus down the road ahead of you? A. I was going to let my car down back of the bus and pulled to the right-hand side of the road. * * *

"Q. When you say you pulled to the right— A. In the right lane of traffic going down.

"Q. What happened next? A. Next I realized that the bus was stopping.

"Q. What did you do then? A. I touched the brake, did not take my clutch out. just touched the brake, and my car skidded just a little.

"Q. Will you tell the jury whether that was the first time your car skidded or not? A. Yes, the first time I was on ice.

"Q. When the car skidded, what then did you do? A. I knew that I was going to have a crash, I felt something was going to happen, and cut the ignition off the motor and thought perhaps that would hold me back of the bus; I had no intention of going around the bus down the hill whatever * * *

"Q. After you cut the ignition, what next happened, or what did you do? A. My first thought was to put my car in the ditch at the right-hand side, which was impossible because of the guard rail.

"Q. Then, Mr. Read, tell the jury. what next happened, or what you did? A. I began to do this—pulled to the left of the bus with intent to go around it.

"Q. What next happened, or what next did you do? A. I got pulled out and I saw the car coming from the other direction, and it looked to me as though there was not a lot of room between the bus and this car, and then my car started skidding sideways down the hill. * * *

"Q. What happened next? A. We were struck."

The evidence further disclosed that the defendant's car skidded toward the south side of the highway and came into collision with the car coming from the opposite direction when .the latter car was partly on the berm and partly on the extreme southerly side of the roadway.

Reasonable minds could conclude only from the evidence that the driver of the car did not have **actual knowledge** of any peril to his passenger until he discovered his inability to stop behind the bus or to pass it on the right side.

The conclusion is likewise inescapable that, when he became conscious of his peril, the evidence not only fails to show that he exercised **no care** whatsoever to save his passengers from harm, but that, on the contrary, he did everything possible in attempting to avoid a collision.

It must be borne in mind that this is not an action in negligence. And while, in an ordinary negligence action,

620

a case might be established under the rule of ordinary care, the Ohio statute no longer permits such an action under the guest law, §6308-6 GC.

The law of wanton misconduct has been before the courts of this state on numerous occasions, and reference is made to a few of the cases decided by the Supreme Court of Ohio, as well as to the case of Fisher v Faflik, heretofore cited, which support the conclusions reached in the instant case. **Higbee Co. v Jackson, 101 Oh St 75, 128 N. E. 61, 14 A. L. R. 131; Reserve Trucking Co. v Fairchild, 128 Oh St 519, 191 N. E. 745; Universal Concrete Pipe Co. v Bassett, 130 Oh St 567, 200 N. E. 843** (this case modifies in certain particulars the preceding cited Higbee Co. and Reserve Trucking Co. cases); **Vecchio v Vecchio, 131 Oh St 59, 1 N. E. (2d), 624; Morrow v Hume, Admx., 131 Oh St 319, 3 N. E. (2d) 39; Akers v Stirn, 136 Oh St 245, 25 N. E. (2d), 286.**

The judgment is reversed, and final judgment rendered for the appellant.

WASHBURN, PJ. & STEVENS, J., concur.