### 37692. HAMBY v. HAMBY.

DECIDED JUNE 24, 1959—REHEARING DENIED JULY 9, 1959.

810

*Charles A. Pannell, Pittman, Kinney & Pope, H. C. Kinney,* for plaintiff in error.

*J. Paxson Amis, James Maddox,* contra.

QUILLIAN, Judge. ■ The defendant in error, in this opinion referred to as the plaintiff, makes the point that on the trial there was no motion for directed verdict, and that the failure to make the motion constituted a waiver of the right of the defendant to insist on the ground "that the verdict was without evidence to support it." The Federal Rule of Practice is that unless a motion that a verdict be ordered by the court is presented to the court, the sufficiency of the evidence will not be passed upon by the Circuit Court of Appeals. The Federal Rule of Practice is that where there is no motion for a directed verdict, the insufficiency of the evidence will not be considered by the Circuit Court of Appeals.

Whether this rule of practice should be adopted and applied by the Georgia courts is a novel question. In so far as we are able, by research, to ascertain, it has not previously been decided since the enactment of the Georgia statute covering judgments notwithstanding the verdict. Before the enactment of that statute the exact point was decided adversely to the plaintiff's contention in *Townsend* v. *Rechsteiner*, 195 *Ga.* 618 (2, 3) (24 S. E. 2d 776). Our Georgia statute, embodied in Code § 70-202, provides without qualification that one of the grounds of a motion for new trial is that the verdict of a jury is found contrary to the evidence. In *Southern Ry. Co.* v. *Adams*, 14 *Ga. App.* 366 (2) (80 S. E. 902), the quoted provision is construed, "A motion for a new trial based solely upon the general grounds, that the verdict is contrary to law and evidence, raises only the question whether there was any evidence to authorize the verdict."

The statute covering judgments notwithstanding the verdict, contained in Code (Ann.) § 110-113 is not, nor is any other law enacted since Code § 70-202, in conflict with the latter statute. *Watts* v. *Roberts*, 93 *Ga. App.* 699, 701 (4) (92 S. E. 2d 605).

■ The plaintiff stands upon the legal principle that where the petition is demurred to generally on the ground that it does not state a cause of action and the demurrer is overruled, if the plaintiff proves his case as alleged he is legally entitled to recover.

Neither the record nor the bill of exceptions, contains any allusion to a demurrer to the petition having been filed or ruled upon. The point apparently is made for the first time in the brief of counsel. In an effort to do complete justice, this court ordered the record of the demurrers and orders upon the same to be certified and transmitted by the clerk of the trial court as parts of the transcript of the record. The certificate of the clerk shows that general and special demurrers were filed, but there was no order entered on, or concerning them. Thus the principle of law relied upon by counsel for the plaintiff is inapplicable in the present case.

■ The plaintiff's right of recovery must, as conceded by the parties, be determined under the statutes and judicial prece-

dents of Ohio, since the collision resulting in the plaintiff's injuries occurred there. The statute of Ohio which was pleaded requires that the host driver must be guilty of wanton misconduct in order for the guest passenger to recover. Section 4515.02 Ohio Revised Code Annotated states: "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from. the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle." The courts of Ohio construe the code section liberally to give its last clause full effect. Miller *v.* Fairly, 141 Ohio St. 327 (48 N. E. 2d 217). So as held in the case of Vecchio *v.* Vecchio, 131 Ohio St. 59 (1 N. E. 2d 624), "In an action for damages for personal injury instituted by a guest against the operator of a motor vehicle, under favor . . . [of this section], such guest must plead facts that reveal on their face the element of willfulness or wantonness, else such pleading is demurrable." As stated, we are bound by the interpretation given the statute by the Ohio courts.

The principle of law that, " 'Where laws of a foreign State are pleaded as a basis of an action, the laws of that State are to be applied in determining the plaintiff's right to recover. The laws of a foreign jurisdiction are to be given the same construction by the courts applying the remedy as that given by its court of last resort,' is applicable to the case at bar. See also, in this connection, *Ga., Fla. & Ala. Ry. Co.* v. *Sasser,* 4 *Ga. App.* 276 (61 S. E. 505) ; *Southern Ry. Co.* v. *Robertson,* 7 *Ga. App.* 154 (66 S. E. 535) ; *Hill* v. *Chattanooga Ry. & Light Co.,* 21 *Ga. App.* 104 (93 S. E. 1027) ; *Southern Ry. Co.* v. *Harper,* 32 *Ga. App.* 267 (123 S. E. 154)." *Lee* v. *Lott,* 50 *Ga. App.* 39, 43 (177 S. E. 92).

We are impressed that in Ohio, as in this State, negligence and wanton misconduct are not merely distinguishable by the degree of care exercised, but are different species of dereliction. See *Blanchard* v. *Ogletree,* 41 *Ga. App.* 4, 7 (152 S. E. 116).

Wanton misconduct arises out of a tendency to perversity; while negligence arises from inadvertence or failure to exercise care. In the case of Akers v. Stirn, 136 Ohio St. 245 (25 N. E. 2d 286) it is held: "The difference between wanton misconduct and negligence is one of kind and not merely of degree." However it is frequently difficult to distinguish wantonness and carelessness. This is recognized in the case of Tighe v. Diamond, 82 Ohio App. 487 (82 N. E. 2d 99), where it is held that wantonness may be actual or constructive. " 'Wilful misconduct', may be of two kinds (a) actual and (b) constructive. (a) Actual 'wilful misconduct' is misconduct where there is intent to injure. (b) Constructive 'wilful misconduct' is conduct where the act causing the injury is intentional, but where there is no voluntary intent to cause injury; in this type of 'wilful misconduct', the execution of the wrongful intentional act must be accompanied by indifference to the safety of others *after knowledge of their danger,* or failure, after such knowledge, to use ordinary care to avoid injury to such others."

The solution of the question as to what constitutes wanton misconduct depends upon the facts of each case, and upon whether the tortfeasor, by the exercise of ordinary care, apprehends that his conduct will in reasonable probability cause injury to another.

As a matter of course, the defendant is not required under the Ohio law, as under Georgia law, to anticipate the danger of a situation until it becomes apparent to him, or in the exercise of ordinary care should have been observed. Ulrich v. Massie, 89 Ohio App. 362 (102 N. E. 2d 274).

This brings us to the consideration of the evidence in the case *sub judice* and the question as to whether the defendant's acts amounted to wanton misconduct. The case pleaded and the proof offered by the plaintiff attempted to base his right of recovery on the fact that the defendant was driving too fast in following another automobile to enable him to stop when that vehicle made a normal stop in obedience to an automatic traffic light. The speed was alleged to have been between 35 to 40 miles per hour, and the space between the defendant's automobile and the automobile in front of him was, according to the

petition, ten to fifteen feet. The petition alleges that the speed at which the defendant was driving and the proximity of his automobile to the automobile he was following, prevented his stopping in time to prevent colliding with it. Thus the plaintiff's whole case depends upon whether the defendant knew or by the exercise of ordinary care should have known that following the automobile at such speed and at such proximity would probably result in the plaintiff's being injured.

It is somewhat doubtful whether, under the views expressed by the Ohio courts, the facts alleged, if proved, would be held to show wanton misconduct.

The briefs of counsel furnished factual instances in which the courts of Ohio have held that on apparently stronger proof than was adduced upon the trial of this case, guest passengers were held not entitled to recover. Johnson v. Gernon, 91 Ohio App. 529 (107 N. E. 2d 377); Koppelman v. Springer, 157 Ohio St. 117 (104 N. E. 2d 695); Vecchio v. Vecchio, 131 Ohio St. 59 (1 N. E. 2d 624).

We have perused many of the opinions of the Ohio courts to ascertain whether there were cases that dealt with the precise or similar situations shown by the evidence in this case. One of these is Murphy v. Snyder, 63 Ohio App. 423 (27 N. E. 2d 152) where we find this ruling: "A driver of a car, who, upon approaching an intersection of two state highways at a rate of speed between 55 and 60 miles an hour, observes a car to his right approaching the intersection, then proceeds to look at the baggage on his running board to see if it is secure and then at his wrist watch for the purpose of checking the correctness of his speedometer, fails to notice a traffic light at the intersection or make any observation of the highway on which he is traveling, and when his attention is called to the car approaching on the intersecting road, accelerates his car in such a manner as to pass in front of such approaching car and becomes involved in a collision with it, is, as a matter of law, not guilty of willful or wanton misconduct so as to be liable in damages for the death of a guest passenger in his automobile." Those cases closest to this case in point of fact are those in which the driver could not see the way ahead and heedlessly continued his course. The

case of Hottel *v.* Read, 66 Ohio App. 323 (33 N. E. 2d 1011) is one in which the driver of an automobile, while operating the vehicle was confronted with a perilous situation due to his inability to stop on icy pavement behind a bus which had slowed preparatory to stopping. He collided with an automobile approaching from the opposite direction and injured his guest passenger. The court held he was negligent but that his conduct did not amount to wanton misconduct, a conclusion by which we are bound but not in accord.

In the case of Schulz *v.* Fible, 71 Ohio App. 353 (48 N. E. 2d 899), it was held that where one drove through a cloud of smoke and collided with the rear of another vehicle, obscured from his vision by the smoke, he was not guilty of wanton misconduct.

In numerous cases the courts of Ohio have held that speed alone does not authorize an imputation of wantonness to the driver. Among these are Clark *v.* Hiatt, 105 Ohio App. 402 (152 N. E. 2d 701); State *v.* Brookman, 52 Ohio Ops. 283 (112 N. E. 2d 416). See also 52 A. L. R. 2d 1356. Nor does the violation of traffic laws necessarily bring the driver's conduct within the statutory meaning of "wanton misconduct." McCoy *v.* Faulkenberg, 53 Ohio App. 98 (4 N. E. 2d 281). But if, arguendo, we assume the petition alleged a cause of action and imputed to the defendant wanton misconduct, the plaintiff's proof fell short of the allegations of the petition.

As to the elements of speed the plaintiff on direct examination testified that the defendant's speed was between 35 to 40 miles per hour. On cross-examination he fixed it at 25 to 40 miles per hour. He then stated that his estimate was based on the reasoning that unless the defendant's automobile was traveling at a speed he estimated, he could not have been seriously injured. At this point it may be observed that the rule of evidence pronounced by our Georgia courts is that if the facts shown by the plaintiff's direct testimony prove his case, and the evidence he gives on cross-examination shows that those facts are untrue, or that he does not know them to be true, his direct and cross-examination neutralizes his testimony and proves nothing. See *Robertson* v. *Carroll Furniture Co.,* 54 *Ga. App.* 841 (189 S. E.

273); *Wallace v. State*, 55 *Ga. App.* 872, 875 (192 S. E. 81).

The reason given by the plaintiff as the basis for his estimate of the speed really furnished no foundation for his conclusion that the speed of the vehicle was 25 to 40 miles per hour. But, be that as it may, the plaintiff made the further observation that when two automobiles approached each other from opposite directions the speed of the two would have to be added together to ascertain their velocity when they met and finally concluded: "As to whether or not I said this morning on examination by my attorney that people don't drive too slow there anyway; well, they drive more rapid there in Cleveland, Ohio, than they do where I am at now. As to whether or not I told my attorney this morning that they don't drive too slow up there; well, no, they don't drive too slow there. As to about what speed of the line of traffic that my son was driving in on that occasion; well, I couldn't say exactly, you would have to be looking at the speedometer and that I was not doing. As to whether or not I did estimate it to Mr. Maddox this morning; well, that is an estimate. My estimate now is the same as this morning. As to what it was this morning; well, I would say between 25 and 40 miles an hour. As to what my estimate of the speed is based on; well, I don't see how a man could be hurt as bad as he was if there wasn't something making some pretty good speed, although there was another vehicle involved which would double the speed at the collision [increase the force of impact?] As to how fast the other vehicle was going; well, I couldn't say that either. As to whether or not my estimate is not reliable, and I would have to know the speed of the other vehicle in order to make my estimate reliable; well, you would have to know the speed of both. No, sir, I don't know." So the plaintiff's proof failed to show that before the collision the defendant was driving at any specific rate of speed. It is true the defendant did give as his opinion that the defendant followed within 10 to 15 feet of the automobile proceeding on the street ahead of him; for what distance he followed the car, the evidence is silent. It is obvious that to follow *too closely* along a city street, even within 10 or 15 feet, could in some circumstances be prudent and ordinarily would not *be to proceed* into danger so

apparent and grave that the driver of the following motor vehicle must be conscious, or by the exercise of ordinary care, ought to know would probably cause a collision resulting in injury to his guest.

If any competent evidence had been furnished by the plaintiff's testimony from which the conclusion could have been drawn that the defendant was chargeable with wanton misconduct it would be necessary that the evidence show facts from which it could be legitimately inferred that such conduct of the defendant proximately caused the plaintiff's injuries. If it be considered, for the purpose of discussion, that the defendant did drive too close to the automobile with which he collided, the question remains as to whether his conduct caused the collision and the consequent injuries sustained by the plaintiff. The plaintiff testified that he was not paying attention and that he did not know how the collision occurred.

The wreck could have been the fault of another or an occurrence that a reasonable, prudent person would not have foreseen, or from negligence, and not wantonness, for all that is shown by the evidence. If the witness, as he admitted, did not know how the unfortunate incident came to pass, the court and jury could know no more, in the absence of other evidence.

The plaintiff merely outlined circumstances, gave a general, though complete, account of the circumstances and description of the locus of the collision. He related that the automobile ahead was moving along 65th Street approaching an automatic signal light, but the witness could not say whether the light signal was a green go or a red stop signal. The witness further gave evidence that a truck was turning into 65th Street from Detroit Avenue; that the defendant's car struck the left fender of the car in front and careened into the pathway of the oncoming truck approaching from Detroit Avenue. These circumstances, at best, preponderated to the theory that the defendant was in some degree negligent in not avoiding the collision with the automobile in front of him, but do not preponderate to the theory that the truck turning in from Detroit Avenue, and with which the defendant collided, had the right of way over the defendant's automobile, or that the defendant should have an-

ticipated that it would make the turn into 65th Street and into the lane in which it proceeded to the point of contact. In short, the plaintiff's proof did not show that the misconduct of the defendant was the proximate cause of the wreck and his resultant injuries. The trial court consequently erred in denying the motion for a new trial, based solely on the general grounds.

*Judgment reversed. Nichols, J., concurs. Felton C. J., concurs except in division 2.*

FELTON, Chief Judge, concurring specially. I concur in the judgment and the opinion except the ruling in division 2 of the opinion. There is no exception to the failure of the court to rule on the demurrers which results in the legal consequence of an undemurred-to petition. See *Southern Bell Telephone & Telegraph Co.* v. *Brackin,* 99 *Ga. App.* 77 (107 S. E. 2d 864).