**CLARK et, Plaintiff-Appellee, v. HIATT et, Defendant-Appellant.**

Ohio Appeals, Second District, Clark County.

No. 525.   Decided November 12, 1955.

William E. Bailey, Bayley, Meals & Taggart, Springfield, for plaintiff-appellee.

McKee & Schwer, Springfield, Wiles & Doucher, Columbus, for defendant-appellant.

(CONN, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By CONN, J.

Upon the trial of this case in the court of common pleas, the jury

returned a verdict for plaintiff in the sum of $7,700.00. Judgment was entered on the verdict and defendant appeals to this court.

Plaintiff in his amended petition alleges that he is a minor, 19 years of age and brings this action by Charles A. Clark, his father and next friend.

For cause of action, against defendant, plaintiff says that State Route No. 70 is a public highway running northwest and southeast between Springfield and S. Charleston, Ohio, and for at least four miles southeast of Springfield it is a smooth, macadam surfaced, two-lane highway.

That defendant is a minor, 19 years of age; that on the night of December 20, 1953, plaintiff was a passenger in the rear seat of a 1952 Oldsmobile sedan, being driven by defendant; that Jack Gaier, Jr. at said time was also riding in the rear seat and Edmond Rice was on the right front seat.

That defendant thereupon drove his auto, so occupied, from Springfield southeasterly on said State Route No. 70 towards South Charleston; that said highway was not lighted and there was snow on the ground adjoining the highway.

Plaintiff further alleges that defendant alternated the speed of his automobile between fast and slow to induce a race with another automobile immediately following; that defendant proceeded at a high rate of speed, to wit: 70 miles per hour, passing another vehicle and crossing the tracks of the new New York Central Railroad as a train was approaching; that defendant increased his speed in excess of 80 miles per hour, passing the point where said highway is entered by Titus Road; that at this point said road is narrow, "high crowned, bumpy, smooth surfaced, and makes a turn to the left" at which point defendant lost control of his automobile, which continued southeasterly, partly on the berm, a distance of 215 feet, colliding with an automobile parked on the west side of the berm and thereafter travelled a further distance of 90 feet, stopping partly on the berm and throwing all the occupants out of defendant's automobile and injuring plaintiff.

Plaintiff's injuries set forth in detail were of a serious and permanent character; that plaintiff incurred large expenses for medical and hospital services, sustained lost wages, and was damaged in the total sum of $27,543.82, for which he prays judgment.

The defendant, by his guardian ad litem, admits that on said date the 1952 Oldsmobile was driven by him; that plaintiff was a passenger in the rear seat of his automobile; and for further answer denies all the material allegations therein prejudicial to defendant.

This action is brought under the guest statute (§4515.02 R. C.) and is predicated on the claim that the wanton misconduct of defendant was the proximate cause of plaintiff's injury and damage.

The evidence is voluminous. It is not practical here to give a detailed recital. On one or more material issues of fact, the evidence is in conflict. Plaintiff's evidence tends to support the allegations in his petition that defendant operated his automobile at an excessive rate of speed as he drove from the city of Springfield to the place in the highway where defendant lost control of his automobile. One of plaintiff's wit-

nesses, who was following defendant's automobile, testified that he observed the tail lights on defendant's automobile began to swerve as he rounded the curve south of Titus Road.

The State Patrolman who arrived at the scene of the accident quite promptly, testified that from his inspection of the premises he estimated the speed of defendant's automobile prior to the collision at 65 miles an hour and up, with a maximum of 85 miles an hour. This witness also stated that the travelled portion of the road was dry; that snow had drifted almost entirely across the road at one point about 150 feet westerly from Titus Road; at this point, the drift was a car and a half or two car lengths long; that the road was slippery and at this point defendant's automobile went out of control, and that from this time on, defendant's car was out of control until it finally came to rest.

This witness also testified that defendant's car was out of control before he came to the curve and that the paved portion of the road at this point was 20 feet wide.

The defendant testified that the road was dry; that he drove his automobile 50 to 55 miles per hour from the time he had crossed the railroad tracks to the scene of the collision; that he lost control of his automobile at a point in the road where there was snow and ice just before he reached Titus Road; that his automobile started sliding and collided with an automobile parked on the berm. Defendant also testified that he did not race with any other automobile and that no one riding in his car protested his manner of driving.

Defendant's testimony was corroborated by Edward Rice, who rode in the front seat, as to defendant's manner of driving and speed; that defendant did not race and that in the vicinity of Titus Road defendant's automobile started skidding; that defendant straightened his car up and it continued skidding, with the front of the car pointed to the lefthand side of the road, and then it slid into a parked automobile.

The principal conflict in the evidence relates to speed and the place where defendant lost control of his automobile.

The jury returned a general verdict for plaintiff and also returned answers to interrogatories on questions of fact submitted to it by defendant. The trial court entered judgment for plaintiff as above indicated.

Defendant's assignments of error (somewhat abridged) are:

"1. The court erred in overruling defendant's motion for a directed verdict at the close of plaintiff's case and at the close of all the evidence, and also erred in overruling defendant's motion for judgment notwithstanding the verdict and entering judgment for plaintiff.

2. The court erred in failing to give special instructions requested by defendant before argument and erred in the court's general charge to the jury; also in failing to further instruct the jury as requested by counsel for defendant and in overruling defendant's motion for a new trial."

1. Upon the overruling of defendant's motion for a directed verdict at the close of plaintiff's case, defendant introduced evidence in his own behalf. In so doing, the alleged error was waived and that issue cannot be raised on this appeal.

The overruling of defendant's motion for a directed verdict at the close of all the evidence and the issue raised deserve careful study. Defendant's motion is predicated on two grounds: first, the amended petition does not state a cause of action against defendant, and, second, the facts disclosed by the evidence do not constitute wanton misconduct on the part of this defendant.

The sufficiency of plaintiff's petition was not raised before trial, by demurrer or otherwise. This does not preclude defendant raising this issue later.

Thomas v. Foody, 54 Oh Ap 423; Bozzelle v. Ind. Comm., 122 Oh St 201; Young v. Featherstone Motors, Inc., 97 Oh Ap 158.

The rule is well established that the plaintiff in this action must plead facts that expressly reveal the element of wantonness. Mere acts or omissions, though violative of statutory or common law duties, do not provide a basis for wanton misconduct.

Murphy v. Snyder, 29 Abs 59; Starr, Admx. v. Gebhart, 71 Abs 33.

We first call attention to the case of Reserve Trucking Co. v. Fairchild, 120 Oh St 519. This case was decided following the enactment of the guest statute, but the cause of action arose prior to its enactment. In this opinion, the court defines a wanton act as:

"* * * implying the failure to exercise any care for the safety of those to whom a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such persons, which the exercise of care might avert, and exhibiting a reckless disregard of consequences."

Unfortunately, the court in the Fairchild case used the phrase "wanton negligence," as in the earlier case of Higbee Co. v. Jackson, 101 Oh St 75. However, in the later case of Universal Concrete Pipe Co. v. Bassett, 130 Oh St 567, the court pointed out that the term "wanton negligence" is a misnomer and its use unwarranted.

In the Bassett case, the Supreme Court again defined wanton misconduct, as follows:

"Wanton misconduct is such misconduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that a party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probablity result in injury."

As we read the later cases in the Supreme Court, it appears that wanton misconduct is defined in substantially the same manner as was done in the Fairchild and Bassett cases. We do not believe that the Supreme Court intended to modify or add to the definition of wantonness by the use of the now famous phrase "manifests a disposition to perversity" or that wantonness is a synonym for "cussedness," which term is defined as manifesting a disposition to willful perversity. However, see Major v. Liggett, 72 Oh Ap 71.

It should be noted that the court did not say that "wanton misconduct" was perverse misconduct, a phrase defined as being "willfully disposed, perverted or wicked." In other words, the distinction between willfulness and wantonness remains unaltered. Cases in tort arising out of the misuse of public highways may be grounded on negligence,

wanton misconduct or willful misconduct. The boundary lines are well defined and there is no blending, such as the colors of the rainbow appear to do.

Even if it were assumed that plaintiff's amended petition could have been successfully attacked before the case was at issue, it is our opinion that the evidence tends to supplement plaintiff's pleading to such an extent that a jury question is raised, having particular reference to that evidence (though somewhat meager and conflicting), which tends to show that defendant lost control of his car at the bend in the road of which curve defendant had prior knowledge.

In passing on defendant's motion for judgment, this court may not weigh the evidence. **McNees v. C. St. Ry. Co., 152 Oh St 269; Jenkins v. Sharp, 140 Oh St 80.**

We conclude that the trial court did not err in overruling defendant's motion for a directed verdict.

If we are right in not sustaining defendant's assignment of error on the ground that a jury question was presented at the close of all the evidence, then it follows that the trial court did not err in overruling defendant's motion for judgment non obstante veredicto; unless, as contended by defendant, the answer to the second interrogatory is irreconcilably inconsistent with the general verdict, in which event it was the duty of the trial court to set aside the verdict of the jury.

The defendant requested the trial court to submit two interrogatories to the jury, as follows:

"1. Does the jury find by a preponderance of the evidence that the defendant at or immediately prior to the accident was guilty of wanton misconduct?"

(Answer) "Yes."

"2. If your answer to interrogatory No. 1 was 'yes,' then state of what acts or omissions of the defendant such wanton misconduct consisted."

(Answer) "Complete disregard for Ohio highway speed law and wanton disregard of safety conditions prescribed by Ohio law pertaining to secondary highways."

The reported cases hold that it is the duty of the trial court to reconcile, if possible, the answers to interrogatories with the general verdict. If this can be done, then the general verdict will stand.

**Klever v. Reid Bros. Express Co., 151 Oh St 467; McNees v. Cinc. St. Ry. Co., 152 Oh St 269.**

In our procedure, the rule is well established that the interrogatories should elicit ultimate facts of probative character as will test the correctness of the general verdict, or at least find probative facts from which ultimate facts, as a matter of law, may be inferred. Furthermore, where there is no finding of probative facts of an ultimate character, it is inferrable that such failure is due to the insufficiency of the evidence.

**Kennard v. Palmer, 143 Oh St 1; Masters v. N. Y. Central R. Co., 147 Oh St 293; Bradley v. Rapid Transit, 154 Oh St 154; Johnson v. Gernon, Jr., 91 Oh Ap 529; Miljak v. Boyle, 93 Oh Ap 169.**

As already pointed out, there is evidence of some probative value that tends to show that the curve in the road was the place where defendant

lost control of his automobile. Under the rule of liberal construction, which we must apply, it is our opinion that the ultimate facts found are not wholly irreconcilable with the general verdict, and that the trial court did not err in overruling defendant's motion for judgment.

Defendant assigns as error the refusal of the trial court to give the jury before argument defendant's request No. 2. This requested charge is lengthy and somewhat cloudy. An examination of its contents discloses that it is a discussion of a number of rules of law related to wanton misconduct rather than a clear and concise rule that the jury could apply. Also that it would in all probability confuse the jury by reason of its abstract character. We find this assignment is not well taken.

In its general charge to the jury, the court read the pleadings and the statutory provisions of the Guest Act, limiting the right of a guest passenger in an automobile to recover damages for injuries proximately caused by the willful or wanton misconduct of the operator or owner of such vehicle.

The plaintiff, before the arguments of counsel, requested the court in writing to instruct the jury on the law of Ohio relating to speed, assured clear distance ahead and that speed of 50 miles per hour is prima facie unlawful. The jury was so charged over the objection of defendant.

In its general charge to the jury, the court again brought to the jury's attention the provisions of the same speed statutes, after reading plaintiff's petition and the averments of excessive speed of the automobile of defendant.

Thereafter, the court called the jury's attention to the provisions of the Guest Act and also defined wanton misconduct in approved form. However, it does not appear that the court charged the jury that operating an automobile at an excessive rate of speed does not, in and of itself, constitute an act of wantonness. Furthermore, the jury was not fully instructed as to the application of the evidence to the issues raised on plaintiff's petition, particularly in relation to the speed statutes, as an aid to the jury in arriving at a verdict on the evidence and the law. **Akers v. Stine, 136 Oh St 245.**

Following the general charge, the defendant requested the court to charge the jury that neither speed, absence of ordinary care, bad judgment or the violation of safety statutes, alone, are sufficient to constitute wanton misconduct. This request was refused.

The court's attention was directed to its frequent use of the phrase "willful and wanton misconduct" throughout the general charge, and counsel for both plaintiff and defendant pointed out that no claim is made of any willful misconduct on the part of defendant. The court thereupon undertook to clarify the court's language on that point, and concluded its statement as follows:

"* * * and I think what we have said to the jury pertaining to the willful and wanton misconduct can be applied and construed as to either willful or wanton misconduct."

In our opinion, the defendant was prejudiced by reason of the failure of the trial court clearly to define the issue and its refusal upon request to instruct the jury fully in the matter of the application of the

evidence in this case to the issues raised on the pleadings, and that the judgment of the trial court should be reversed and the cause remanded for a new trial.

MILLER, PJ, HORNBECK, J, concur.

No. 525.   Decided January 6, 1956.

## OPINION

By CONN, J.

Defendant-appellant has filed an application for rehearing and reconsideration of the decision of this court, previously announced, on the ground that the court should have entered final judgment for defendant-appellant. The application is supported by an exhaustive and carefully prepared brief.

It is appellant's contention that the decision is erroneous and further that it is contrary to the prior decisions of this court and other courts of appeal, and also the supreme court.

We have re-examined the opinion and decision of this court to determine whether or not this sweeping premise is well taken. The following summation will set forth the court's conclusion and the basis upon which is rests.

In the first instance, it may be observed that the issue here is not raised by a demurrer to the petition or by a motion for judgment on the pleadings. Furthermore, there is no line of demarcation between the contention of appellant, relative to what acts, on the part of an operator of a motor vehicle, constitute wanton misconduct under the reported cases in Ohio, and the consideration given the same subject matter in the instant case, as appears in the court's opinion.

The application before us is grounded on two of the issues heretofore raised on the record, and presented on the original hearing, to wit: that the trial court erred in overruling appellant's motion for a directed verdict and his motion for judgment notwithstanding the verdict.

It appears to be appellant's claim that "knowledge of only one condition, which was the bend in the road," is an insufficient fact situation upon which to predicate wanton misconduct on the part of the defendant, in the absence of other conditions which were set forth in plaintiff's petition.

When defendant made his motion, at the close of all the evidence, for a directed verdict, and subsequently his motion for judgment notwithstanding the verdict, the trial court was required to construe and apply the evidence, and the inferences that arose thereon, most strongly in plaintiff's favor, and after doing so, if the court could find that "reasonable minds can come to but one conclusion and that conclusion is adverse" to the party against whom the motion is directed, then such motion must be sustained. (**Hamden Lodge case, 127 Oh St 469.**)

However, after a reconsideration of the issues raised by defendant's motions, and without again setting forth the basis of our conclusions, we are of the opinion that reasonable minds may reach different conclusions upon the evidence and that the fact issues presented were for the jury. On this thesis, the motions for judgment were properly overruled by the trial court.

Relative to the claim that the jury's finding on the special interrogatories was irreconcilable with the general verdict, we incorporate herein, by reference, what was said on this issue in the court's opinion and the consideration given therein.

Therefore, the court re-affirms the conclusion previously reached that the trial court did not err in finding that the answers of the jury to the interrogatories submitted were not irreconcilable with the general verdict and that said court did not err in overruling defendant's motion for judgment.

It may be said that the issues presented on the record of this case, and again raised on appellant's application, are of serious import and not free from difficulty. However, it is the conclusion of the court, that the decision previously announced in this case, should be re-affirmed.

Appellant's application for rehearing is denied.

MILLER, PJ, HORNBECK, J, concur.