CLARK, A MINOR, APPELLEE, *v.* HIATT, A MINOR, APPELLANT.*

(No. 541—Decided December 2, 1957.)

*Mr. Robert G. Bayley* and *Mr. William E. Bailey,* for appellee.

*Messrs. McKee, Schwer & Taggart* and *Messrs. Wiles & Doucher,* for appellant.

*Motion to certify the record overruled, April 16, 1958.

WISEMAN, J. This is an appeal on questions of law from a judgment entered on the verdict of a jury rendered in favor of the plaintiff, appellee herein, for the amount of $10,000 in a suit for damages for personal injuries suffered by the plaintiff while riding as a guest in an automobile driven by the defendant, appellant herein.

This is the second time this court has reviewed a judgment entered for the plaintiff in this action. The opinion of this court on the first review is found in 73 Ohio Law Abs., 116, 136 N. E. (2d), 412 (motion to certify the record overruled, May 16, 1956).

This action was brought under the provisions of Section 4515.02, Revised Code, which permits an action to be brought against the driver of a motor vehicle for injuries to a guest upon the claim that the driver was guilty of wanton misconduct. This court reversed the judgment in the first appeal on the ground that the court failed to charge the jury that neither speed, absence of ordinary care, bad judgment or the violation of the safety statute alone are sufficient to constitute wanton misconduct, and that the failure to so charge constituted prejudicial error.

The evidence presented at the second trial was similar to that presented at the first trial. Several questions raised on this appeal were determined by this court in the former appeal.

This case went to trial the second time on the same amended petition.

At the close of plaintiff's case, the court, over the objection of the defendant, permitted the plaintiff to amend the amended petition to conform to the evidence by alleging that the defendant had knowledge of all the conditions of the road at the time of the accident. The answer to the amended petition, which was later refiled as the answer to the amended petition as amended at the close of the plaintiff's case, admitted certain undisputed facts, which was followed by a general denial. To the amended petition as amended at the close of the plaintiff's case the defendant filed a general demurrer, which was overruled. Also, defendant filed a motion for directed verdict, which was overruled. The defendant then presented evidence in support of his defense.

The pertinent allegations in the amended petition as amended at the close of the plaintiff's case are herein set forth, with the last amendments italicized. In substance the plaintiff alleges: Plaintiff, James A. Clark, a minor 19 years of age, states that the defendant, Edmund Hiatt, Jr., was a minor 19 years of age; that the Springfield-South Charleston Pike, also known as State Route No. 70, was a public highway extending between Springfield and South Charleston, and that for a distance of 4 miles southeast of Springfield this highway is a smooth macadam surfaced two-lane highway running generally northwest and southeast, *which defendant knew at the time of this accident*; that on the night of Sunday, December 20, 1953, plaintiff was a passenger in the rear seat of a 1952 Oldsmobile sedan being driven by the defendant in Springfield, and, also, in this automobile were two other teenage companions; that shortly after midnight, while this automobile was so occupied, the defendant drove his car out of Springfield onto the Springfield-South Charleston Pike; that there was other traffic on the highway, that the night was dark and the highway was not lighted and there was snow visible on the ground adjoining the highway, *which defendant knew;* that while the defendant was driving southeastwardly on said pike he alternated the speed of his automobile between fast and slow, the purpose of this being to induce a road race with another automobile traveling said highway in the same direction, *which the defendant knew*; that in this manner defendant drove his automobile through the intersection of Bird Road with the Springfield-South Charleston Pike, and proceeded on said highway at a high rate of speed, to wit, 70 miles per hour, passing another vehicle and going over the tracks of the New York Central Railroad which intersects said highway southeast of Springfield, notwithstanding that a train was approaching this railroad-highway intersection, *which defendant knew*; that thereafter, when another automobile attempted to pass the defendant's automobile at a point adjoining the Clark County Fairgrounds, the defendant increased the speed of his automobile so that it was traveling in excess of 80 miles per hour *with only his dim light operating and without keeping a lookout on the road in the direction in which his automobile was traveling*, so that it passed the junc-

tion of Laybourne Road with said highway, and continued to a point where the highway is entered by the Titus Road, at which point the Springfield-South Charleston Pike is narrow, unlighted, high-crowned, bumpy, smooth-surfaced, and makes a turn to the left at the same point at which it starts uphill, *all of which defendant knew*, at which point defendant lost control of his automobile, which automobile traveled southeastwardly a distance of approximately 165 feet, on the berm of the highway, then ran off the highway, turning sidewise, and traveled southeastwardly an additional 150 feet, at which point it struck with its right side the rear of a sedan automobile parked off the west side of the highway on the berm, and which automobile thereafter traveled another additional 90 feet, finally coming to a stop partly on and partly off said highway, with all the occupants of the defendant's automobile, including the plaintiff, thrown out, and as a result of this collision plaintiff was severely injured; and that in so driving his automobile, defendant was guilty of wanton misconduct towards the plaintiff, the wanton misconduct directly and proximately causing the injuries to the plaintiff. Plaintiff then alleges the extent of his injuries and damages.

The plaintiff presented evidence of a substantial character supporting the allegations in the amended petition as amended at the close of the plaintiff's case to conform to the proof.

At the close of all the evidence, the defendant moved for a directed verdict on two grounds: (1) That the amended petition as amended at the close of plaintiff's case does not state facts sufficient to constitute a cause of action; and (2) that the evidence does not make a case of wanton misconduct. The motion was overruled. Certain special instructions were given before argument, to which the defendant objected. Interrogatories were submitted to the jury. After the verdict, defendant moved for judgment notwithstanding the verdict and for a new trial, both of which motions were overruled.

Eight specific errors are assigned. The defendant claims the court committed error in overruling its demurrer to the amended petition prior to the amendment and at the beginning of the case; error in permitting plaintiff to amend the amended petition at the close of the plaintiff's case; and error in over-

ruling defendant's demurrer to the amended petition as amended at the close of the plaintiff's case. In our opinion, the court very properly permitted the amendment of the amended petition to conform to the proof.

We find no prejudicial error in overruling the demurrers. The defendant contends that the facts alleged do not show wanton misconduct on his part. We disagree. This question is more fully discussed under other assignments of error. If the amended petition was defective by the failure to allege defendant's knowledge of road conditions, this defect was corrected by the amendment of the amended petition to conform to the proof before the case went to the jury. The defendant did not elect to stand on the court's ruling on the demurrer at the beginning of the case.

The defendant claims the court erred in overruling defendant's motion for directed verdict at the close of all the evidence. The evidence must be construed most favorably to the plaintiff. The defendant claims the evidence fails to show wanton misconduct on his part. In *Helleren, Admx.,* v. *Dixon,* 152 Ohio St., 40, 86 N. E. (2d), 777, the first paragraph of the syllabus defines wanton misconduct as follows:

"\* \* \* wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. \* \* \*"

In *Jenkins* v. *Sharp,* 140 Ohio St., 80, 42 N. E. (2d), 755, the court, on pages 82 and 83, said:

"Wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortious character. \* \* \* Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of the danger, with indifference to consequences and with absence of all care. \* \* \*

"\* \* \* With respect thereto the rule has been stated in *Morrow* v. *Hume, Admx., supra* [131 Ohio St.], at page 324, in this manner: '\* \* \* wantonness can never be predicated upon

speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness.'

"In the case at bar the defendant's state of mind is disclosed by the circumstances that transpired before and at the time of the accident."

In *Schulz* v. *Fible,* 71 Ohio App., 353, 48 N. E. (2d), 899, the court on page 358 sets forth certain guides by which to determine the character of the conduct, one of which is: "Conscious and timely knowledge of approach to unusual danger with a known probability of injury to others, if coupled with indifference to such consequences and an absence of *all* care, presents evidence of wilful and wanton misconduct." Further citations or quotations will serve no useful purpose. The cases of *Ulrich, a Minor,* v. *Massie,* 89 Ohio App., 362, 102 N. E. (2d), 274, and *Fessel, Admr.,* v. *Schwartz, a Minor,* 94 Ohio App., 201, 114 N. E. (2d), 730, and other cases cited are distinguishable on the facts. When this question was presented to this court on the first appeal it was resolved in favor of the plaintiff. Plaintiff is in the same or better position now with respect to this question. We do not have a case of speed alone, but certain concomitant facts show an unusually dangerous condition, of which the defendant had knowledge. There is evidence that the defendant was operating his automobile the last mile at a tremendous rate of speed, 75 to 85 miles per hour, on a dark night with his headlights deflected downward, with snow along the edge of the road and that there was an abrupt bend in the road of which the defendant had knowledge, and towards which he continued to drive without slowing down, and that immediately before coming to the bend in the road at such high rate of speed he drove through the snow drifted across the road, which was slippery.

We are of the opinion that reasonable minds could reach different conclusions on the evidence. With respect to the al-

legation of wanton misconduct, a jury question was presented. The motion for directed verdict was properly overruled.

The defendant claims error in the admission of evidence. We find no error in permitting the state highway patrolman, after being qualified as an expert, to testify as to his opinion as to the rate of speed of the defendant's automobile, based on the physical facts which he found at the scene of the accident. The patrolman was first permitted to testify that the defendant's automobile was traveling at a high rate of speed. In explanation, he testified he reported the speed at 65 miles per hour. He was permitted to testify that under the same road conditions a safe speed at the point where the accident occurred, at the bend in the road, would be 35 to 45 miles per hour. Plaintiff called an engineer who had made measurements of the distances between particular points on the highway over which the defendant traveled, and at a place when he was trailed by another automobile. This witness was permitted to testify at what rate of speed the defendant was traveling to cover a certain distance in feet if the other automobile covered a named distance in feet at a named rate of speed. This question called for a mathematical calculation. All this testimony was given over the objection of the defendant. We find no prejudicial error in the admission of this line of testimony.

Defendant claims the court erred in giving several special instructions requested by the plaintiff. Special Instruction No. 2 was a charge on assured clear distance ahead, No. 3 on speed, No. 5 on headlights, and No. 6 on keeping a proper lookout ahead. The defendant claims these instructions were abstract principles of law and had no application to the facts, and, if given, should have been elucidated. The instructions stated correct principles of law relating to the particular matter covered. The instructions were applicable and pertinent to the issues raised by the pleadings and the evidence and were properly given. *Chesrown* v. *Bevier,* 101 Ohio St., 282, 284, 128 N. E., 94: *Discount & Deposit State Bank* v. *Litt,* 5 Ohio App., 439, 442; *O'Grady* v. *City of Newark,* 6 Ohio App., 388, 391; *Smythe, Admx.,* v. *Harsh,* 24 Ohio App., 391, 394, 156 N. E., 619; 39 Ohio Jurisprudence, 1036, 1039, Section 318.

The defendant claims the court erred in its general charge. The court charged that "wanton misconduct is to a great extent subjective, or a mental condition" and made other statements of similar import. That wanton misconduct is "essentially an attitude of mind" is stated in *Jenkins* v. *Sharp, supra* (140 Ohio St., 80), at page 82. See, also, *Schulz* v. *Fible, supra* (71 Ohio App., 353), at page 358, where the court states that the inquiry must be directed to a determination of the "mental state" of the defendant. The defendant contends that the trial court committed reversible error in other branches of the general charge, and quotes long excerpts from the charge, which we do not set forth as we do not deem it necessary. We have carefully examined the charge and have considered the points raised in brief of counsel. We find the general charge to be fair, comprehensive, a correct statement of the applicable principles of law, and free of reversible error.

The defendant contends that the trial court erred in overruling his motion for judgment notwithstanding the adverse verdict and in overruling his motion for a new trial. The jury returned a general verdict with answers to 11 interrogatories. Interrogatory No. 1 and the answer are as follows:

"Does the jury find by a preponderance of evidence that the defendant at or immediately prior to the accident, was guilty of wanton misconduct?

"Answer—Yes."

Interrogatory No. 2:

"If your answer to Interrogatory No. 1 was 'yes,' then state of what acts or omissions of the defendant such wanton misconduct consisted.

"Answer—Interrogatory question sheets answered, Yes, and numbered 3, 4, 5, 6, 7, 8."

We must resort to a consideration of the interrogatories and answers given as enumerated in the jury's answer to interrogatory No. 2. Interrogatories Nos. 3, 4, 5, 6, 7 and 8 and the answers thereto are as follows:

Interrogatory No. 3:

"Do you find that the defendant immediately prior to his wreck, knowingly drove his automobile at a greater speed than permitted him to bring his automobile to a stop within the assured clear distance ahead?

"Answer—Yes."

Interrogatory No. 4:

"Do you find that the defendant immediately prior to his wreck, knowingly drove his automobile at nighttime without his headlights directed high enough to reveal substantial objects at a safe distance in advance of his automobile?

"Answer—Yes."

Interrogatory No. 5:

"Do you find that the defendant, immediately prior to his wreck, was knowingly driving his automobile at a greater speed than was reasonable. and proper considering that there was snow along the sides and on the berm of the highway?

"Answer—Yes."

Interrogatory No. 6:

"Do you find that the defendant was, immediately prior to his wreck, driving his automobile at a greater speed than was reasonable and proper at nighttime?

"Answer—Yes."

Interrogatory No. 7:

"Do you find that the defendant immediately prior to his wreck, knowingly drove his automobile at a greater speed than was reasonable and proper with his dim lights on?

"Answer—Yes."

Interrogatory No. 8:

"Do you find that the defendant knowingly drove his automobile towards the bend in the road immediately northwest of where his wreck occurred, at a greater speed than was reasonable and proper considering his knowledge of that bend in the highway?

"Answer—Yes."

The defendant contends that most of the interrogatories and the answers thereto relate to the matter of speed, and that "excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness," citing *Akers* v. *Stirn,* 136 Ohio St., 245, 25 N. E. (2d), 286, and that the failure of the jury to find the existence of conscious knowledge by the defendant of an approach to an unusual danger, absence of all care on his part, and an indifference to consequences, is equivalent to a finding against the party having the burden of

establishing wanton misconduct, citing *Masters* v. *New York Central Rd. Co.*, 147 Ohio St., 293, 70 N. E. (2d), 898. We agree with the statement of law, but disagree with its application to the facts in this case. In our opinion we do not have a case where wanton misconduct is predicated solely on the question of speed, but one where concomitant facts show an unusually dangerous situation, of which the defendant had knowledge and proceeded at an excessive speed with a reckless disregard of the consequences. The answers to the interrogatories support the claim of the plaintiff, that excessive "speed, plus such unusually dangerous surroundings and knowing disregard of another's safety amount to wantonness." *Jenkins* v. *Sharp, supra* (140 Ohio St., 80), at page 83. *Morrow* v. *Hume, Admx.,* 131 Ohio St., 319, 324, 3 N. E. (2d), 39.

The motions for judgment notwithstanding the verdict and for a new trial were properly overruled. In our opinion, the verdict and judgment are sustained by sufficient evidence and are not contrary to the manifest weight of the evidence or contrary to law. We find no error in the record prejudicial to the rights of the defendant, and the judgment is, therefore, affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and CRAWFORD, J., concur.