MᴄMᴀɴᴜs, Aᴅᴍx. ᴏꜰ ᴛʜᴇ Eꜱᴛᴀᴛᴇ ᴏꜰ Jᴜᴅɪᴛʜ Dɪᴀɴᴇ MᴄMᴀɴᴜs, Pʟᴀɪɴᴛɪꜰꜰ, *v.* Bᴜꜱᴋɪʀᴋ, A Mɪɴᴏʀ ᴇᴛ, Dᴇꜰᴇɴᴅᴀɴᴛꜱ.

Common Pleas Court, Vinton County.

No. 9724. Decided June 12, 1962.

98

*Messrs. Volkema, Wolske & Bopeley*, for plaintiff.
*Mr. M. D. Slavens, Mr. Harry B. Reese* and *Mr. Joseph A. Oths*, for defendants.

(BACON, J., of Meigs County, sitting by assignment in Vinton County.

BACON, J. Motion for new trial. Although aware that the plaintiff has the burden of proof, the trial court directed the jury to render a verdict for plaintiff and to assess the damages. After deliberation the jury returned a verdict of $12,500.00 for the wrongful death of plaintiff's decedent, Judy McManus, an attractive 17-year-old Junior of considerable promise.

Defendants defend under the guest statute, averring that Judy was riding as a guest and the 16-year-old driver, Anna Jane Buskirk, could kill her without civil liability so long as she refrained from wilfull or wanton misconduct. However, the court determined as a matter of law Judy was not a guest within Section 4515.02, Revised Code, upon the following undisputed evidence.

January 22, 1960, the Junior Class held a meeting at Hamden High School. The class was presenting a play and decided at that meeting to print a program. The Juniors further decided to solicit advertising from merchants in Wellston to defray the cost. Any surplus after paying the printing expense

would go into the class treasury, for use for the trip the class took as Seniors or a similar common benefit.

All members of the class were to solicit and their transportation to Wellston for this business was required. The defendant, Anna Jane Buskirk, volunteered to drive her father's automobile and her offer was accepted. Before the meeting adjourned she agreed to transport Judy, Glenna Harper, Alice Salmons, Linda Hutchison, Connie Sorrell, Juanita Stewart and Karen Fain, all classmates, and all in the cast of the Junior Class play.

Anna Jane had the leading role. Judy's part was second in importance. Pursuant to the agreement, Anna Jane on January 23, 1960, was transporting as solicitors, Judy, Glenna, Alice, Linda, Connie, Juanita, when on the way to pick up Karen she lost control of her automobile on Route 160 as hereinafter described.

No authorities are required that the automobile guest statue is in derogation of the common law and is, therefore, strictly construed. Where the facts disclose a relationship other than passenger and guest, courts readily take the case out of the operation of the statute.

The disposition of these girls disclose that all came within that appellation "Jolly Juniors." Judy's personality was above average. While all were to share more or less in the proceeds of the solicitation upon which they were engaged, Anna Jane undoubtedly would have enjoyed the greatest benefit. In the leading role her name would head the cast in the printed program, which would have large circulation, leaving a permanent memento of her dramatic abilities. It is likely the solicitation by these popular, personable young ladies would have increased attendance at the presentation of the play itself.

Certainly it was an honor for Anna Jane to have the leading role. Her popularity was very likely to be increased both by the performance and the printed program. The latter, of course, would be calculated to increase enjoyment of the performance by the cast.

Query! If one volunteers to transport one's classmates upon a common business or solicitation, the benefits of which he will also share, does not he owe at least the duty to exercise ordinary care in accomplishing that transportation? The trial

court answered this affirmatively. Then does the undisputed evidence disclose Anna Jane Buskirk failed to exercise ordinary care?

The only matter Anna Jane disputes is that part of her statement taken by Patrolman H. G. Baughman, of the State Highway Patrol, which states: "The road was bumpy and we were all having fun bouncing. I was trying to bounce the girls off the back seat." In her testimony at the trial she did not remember making those statements, although she remembered the patrolman taking her account in his handwriting, which she signed.

Having concluded the guest statute does not apply, the sole issue whether Anna Jane was or was not taking the hillcrests in a manner calculated to "bounce the girls off the back seat" is unimportant. But let it be said that the fact she learned to drive on that section of Route 160 with its numerous hillcrests inviting just such action on the part of unheeding drivers, plus all of the other facts and circumstances, lend credence to the truth of her signed statement. Upon the evidence a jury certainly have been justified in reaching that conclusion and that such was wilful and wanton disregard for the safety of her "guests" if the case had come within the guest statute.

This is not a case where there was an accident requiring the doctrine of res ispa loquitur to fasten liability upon Anna Jane Buskirk, and her mother, Shirley Buskirk, who must respond under her contract of liability upon her daughter's license application. The exhibits and testimony upon the physical, visible aspects of the automobile and objects involved, the actions of the driver, positively shout that Miss Buskirk was not exercising ordinary care.

Briefly, there was no other operator involved nor passenger contributing to the cause of the demolition of the auto in which the girls were riding. Plaintiff's exhibits 2j, 2k, 2l and 2a disclose that only an initital speed very, very close to that estimated by Patrolman Baughman, could have resulted in the damages evident in the photos. The terrific speed estimated, 80 MPH, is borne out by the testimony of one of the girls that Anna Jane was "fighting the wheel" to bring the car under control, one side of the road to the other then back and along

the berm, the entire assured clear distance between the two hillcrests, 442 feet.

The evidence demonstrates Anna Jane, at the first hillcrest, was driving at a speed greater than would allow her to stop within the assured clear distance ahead. Her speed combined forces of thrust and gravity upon the automobile so that its underparts gouged the highway 78 feet from the hillcrest. Or, in brief, Anna Jane's speed "launched" the "burden" with such thrust that the auto traveled 78 feet before gravity could exert enough force to bring it to earth, or to customary position upon the "carriage."

Plaintiff's exhibits 2b, 2c, 2d, 2e, and 2i, photos east and west, disclose the assured clear distances involved, as well as the skid and scrape marks. Exhibit 2e shows plainly the skid marks, retraceable from the destroyed post, running off the highway from across the centerline. Clearly Miss Buskirk began to lose control as the "burden" commenced to leave the "carriage" at the hillcrest. She never regained control. It is not likely the auto was traveling 80 miles per hour when it began to disintegrate against the post, ground and telephone pole, 150 feet beyond the assured clear distance, but the State Highway Patrolman estimated her speed at the vital point, that first hillcrest. Anna Jane having confessed she didn't know how fast she was driving, and none of her passengers knowing or being able to relate her speed, the estimate of Patrolman Baughman, ten years experienced in highway crash investigation, made after the careful investigation in this case, is reasonable.

Here the court would emphasize that Anna Jane was driving at terrific speed West of a hillcrest which was rapidly decreasing her assured clear distance to practically ZERO! It was only after she topped the hillcrest that her assured clear distance was increased to 442 feet! Within that great distance she was unable to bring her car under control, let alone bring it to a stop!

Extensive citation of authority is to be avoided. Otherwise one sinks into a morass which often obliterates the issues and legal principles alike. This is not the first case where the court upon undisputed evidence as a matter of law concluded a passenger was not a guest within the guest statute. *Bailey* v.

*Neale,* 63 Ohio App., 62, 25 N. E. (2d), 310, 16 Ohio Opinions, 290.

The facts of this case do not approach those in *Morrow* v. *Hume,* 131 Ohio St., 319, 3 N. E. (2d), 39, 6 Ohio Opinions, 21, wherein Judge Williams pointed out:

"There is no evidence in the record to show that the automobile left the road on account of the speed at which it was going. . ."

At Anna Jane's speed her automobile became a projectile which eventually disintegrated when she could not control its course.

The undisputed facts disclose circumstances strongly approaching those in *Billings* v. *Carroll,* 171 Ohio St., 167, 168 N. E. (2d), 310, 12 Ohio Opinions (2d), 287, which prompted Judge Bell to remark:

"There are some members of this court who are willing to say that, under such circumstances, the driving at a speed of 110 or even 90 miles an hour is wanton misconduct as a matter of law."

In that case the "circumstances" in addition to 90 miles per hour, proved to be snow alongside the highway in February, likely to melt and freeze under flluctuating temperatures, leaving ice upon the highway. Here Anna Jane drove 80 miles per hour over hillcrests well known to her, which on several occasions reduced the assured clear distance to nearly ZERO.

The Billings decision discloses that the supreme court is rapidly receding from the proposition first stated in the cases of *Morrow* v. *Hume, supra,* and *Akers* v. *Stirn,* 136 Ohio St., 245, 25 N. E. (2d), 286, 16 Ohio Opinions, 335, that:

"Excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness."

There is no reason why the supreme court should not recognize the truth that speed is the killer behind most traffic fatalities. Query: Can not one be wilfull and wanton with respect to speed alone? Do not 34,000 traffic fatalities annually upon American highways answer that question?

This court believes that the evidence disclosed elements of wilfull and wanton misconduct to be resolved by a jury. But the undisputed evidence disclosing Judy McManus was not a guest and abounding in lack of ordinary care upon the part

of Miss Buskirk, there fell a duty to direct the jury to return for plaintiff against defendants and to assess the damages.

Defendants also urge the court erred in allowing evidence upon Judy's funeral expenses. This question is unsettled in Ohio. The cases cited by counsel have been examined. *Gaus* v. *Penna R. R. Co.*, 56 Ohio App., 299, 10 N. E. (2d), 635, 9 Ohio Opinions, 389, 25 Ohio Law Abs., 24, is the pillar upon which defendants' line of authorities rests. But in that case the court charged the jury as a matter of law that Gaus, the administrator and surviving spouse, was contributorily negligent! Having contributed to his wife's death he could not share as a beneficiary in the wrongful death action, nor could he recover for her funeral expenses! The other beneficiaries not having paid them, they were not a pecuniary injury to them, and the trial judge was correct when he excluded them and charged the jury to disregard them in assessing the damages. He was, of course, affirmed by the court of appeals.

Yet Judge Hornbeck cites the *Gaus case* as controlling in *Sprung* v. *E. I. duPont Co.*, 30 Ohio Law Abs., 278, 34 N. E. (2d), 41, 16 Ohio Opinions, 352, although none of the beneficiaries were guilty of contributory negligence. (It is interesting to note that Judge Hornbeck ordered a remittitur of the amount of the funeral expenses as cure for the alleged error.)

In *Moss* v. *Hirzel Canning Co.*, 100 Ohio App., 509, 137 N. E. (2d), 440, 60 Ohio Opinions, 397, again principal reliance was upon the *Gaus case*, and again no element of contributory negligence.

Even Judge Bell, now a member of the supreme court, in his opinion, *Hunter* v. *McKinney*, 69 Ohio Law Abs., 237, 46 Ohio Opinions, 17, 101 N. E. (2d), 810, cites the *Gaus case*, and the *Sprung case* as well, as placing Ohio against the majority rule, although actually they do not. Judge Bell went on to say "It is the opinion of the court that such expenses should be a proper item of damages in a Wrongful Death action."

This court is persuaded by the reasoning of Judge Davies in *Albers* v. *Great Central Transport Corp.*, 28 Ohio Opinions, 287, 14 Ohio Supp., 25, who adopted that in 94 A. L. R., 440:

"In a large majority of the states in which the question has arisen, it is held that funeral expenses are recoverable as damages in an action for death by wrongful act. The ground

for this holding, usually, is that the funeral expenses are a direct result of the wrongful death, and as a matter of justice should be considered as an item of damages suffered by the person liable to pay them."

Judge Davies had the question squarely before him.

And in *Buchanan* v. *Battson, Adm'x.*, 13 Ohio Law Abs., 551, 56 N. E. (2d), 339, the question again squarely presented, it was decided funeral expenses were recoverable in a wrongful death action, although they constituted more than one-half of the jury's award!

It is believed that were the question to be considered in light of this re-examination of the *Gaus case*, Ohio would follow the majority rule.

The only other error urged, which this court finds worthy of comment, is that the court allowed the opinion of Patrolman Baughman. He gave his opinion as to the speed Anna Jane was traveling at the first hillcrest.

Courts have consistently permitted even laymen to express their opinions upon the speed of vehicles. Wigmore on Evidence, Sections 571 and 1977. The speed of a horse, judged by the sound, has been allowed. One must take judicial notice that as the speed of a motor vehicle increases, the tone, pitch, volume of the motor noise changes. Likewise that of the "whine" of the tires upon the highway. How often the attention of a witness is called to the speed of a vehicle by the sound that precedes it!

True, Patrolman Baughman did not see the vehicle in motion nor did he hear it, but he qualified as an expert with ten years' investigative experience of highway crashes and gave his opinion based upon the physical facts he found at the scene of the accident. This was precisely as in *Clark* v. *Hiatt*, 105 Ohio App., 402, 152 N. E. (2d), 701, 6 Ohio Opinions (2d), 166, Judge Wiseman, speaking for the court of appeals in an unanimous opinion, found no prejudicial error in the admission of such testimony.

Defendants offered no direct evidence to dispute that of the highway patrolman. They did attempt to discredit him. First, in his observations. Secondly, not upon his lack of experience but upon his lack of promotion.

The cross-examination, as with most, both strengthened and weakened portions of his testimony, but had little effect upon his credibility. Significantly strengthened was the fact Anna Jane's auto made the gouge marks upon the highway shown in the photographs—the "noise" which caused the girls to scream.

As to Patrolman Baughman's lack of promotion—fortunately conditions were not the same with the Highway Patrol as with Rudyard Kipling's "Cholera Camp."

"Twou'd make a monkey cough to see our way of doin' things— Lieutenants takin' companies and Captains takin' wings, An' Lances actin' Sergeants—eight file to obey—For We've lots o'quick promotion on ten deaths a day!"

When the United States found itself at, war in 1941, naval officers who had held their ranks for almost a decade or more suddenly were advanced TWO RANKS, one permanent, one temporary. Did such promotion ipso facto increase their proficiency? Was it inefficiency that held them in rank so long?

Before there can be a promotion there must be a vacancy by death, retirement, resignation or expansion of the corps.

There was no offer to demonstrate that Patrolman Baughman had not made the investigation as he had been trained to do it, that he had left anything undone that is customarily done in such investigations.

On the contrary, recognizing that the driver's speed had caused her out-of-control automobile to disintegrate alongside a dangerous stretch of highway—that the crash had taken the life of a 17-year-old girl—Patrolman Baughman summoned the patrol photographer. This is not usually done in the ordinary accident investigation.

True, defendants being asked to respond in damages do not now appreciate the diligence exercised by Patrolman Baughman in his investigation. This is solely because the facts establish their liability. Were they plaintiffs in a negligence action under like facts, the Highway Patrolman would be a hero and champion of "right."

Traffic laws were enacted that the public might use our highways with some degree of safety. The State of Ohio has done a commendable job in securing career officers to assist in traffic law enforcement.

The motion for a new trial is overruled.