GEORGE W. HARDWICK, JR., a minor, by Leona Bartz, his mother and next friend, appellee, v. DARREL A. BUBLITZ et al., appellants.

No. 50713.

(Reported in 119 N.W.2d 886)

FEBRUARY 12, 1963.

REHEARING DENIED APRIL 9, 1963.

Pappas & Senneff, of Mason City, for appellants.

Floyd Ensign, of Northwood, and Westfall, Laird & Burington, of Mason City, for appellee.

THORNTON, J.—One phase of this case has been before us previously, Hardwick v. Bublitz, 253 Iowa 49, 111 N.W.2d 309.

Plaintiff, a minor, 15 years old at the time of the accident, brings this action by his mother as his next friend. Defendant Darrel A. Bublitz permitted his younger brother, Dean, then 15 years old, to use his 1953 Chevrolet to go to a 4-H meeting on November 10, 1958. Plaintiff's claim against Darrel is based on the reckless operation by Dean, section 321.494, Code of Iowa, 1958. (All references herein to the Code of Iowa refer to the Code of 1958.) His claim against defendants Harold and Lucille Bublitz, Dean's parents, is based on knowingly permitting Dean, an unlicensed driver, to drive on the highway, section 321.219, and permitting an incompetent driver to drive on the highway.

A jury verdict was returned against all defendants and they appeal.

Plaintiff was severely injured when the car driven by Dean went off the road. Plaintiff was a passenger, but the record does not show whether he was a front or rear seat passenger. Four other boys, about the same age, were in the car besides plaintiff and Dean. It is conceded Darrel permitted Dean to use his car. Dean drove from his farm home to the 4-H meeting. After the meeting, he, with the others, drove to Grafton. There they stopped to eat. Afterward they went for a ride. Dean drove south out of Grafton two miles, then turned right or west on a gravel road. He drove west a little less then a mile and a quarter, to where there is a slight curve to the south after which the road runs on west. At the point of the curve the car went into the ditch, through fences, knocked down fence posts, and turned over two or three times. Plaintiff and another boy were thrown from the car. Further facts will be discussed as they relate to the points urged for reversal.

I. Defendants urge it was error to allow First Sergeant Vern Jackley of the Iowa Highway Patrol to testify that in his opinion the Bublitz car was traveling between 55 and 70 miles an hour when it left the traveled portion of the gravel road. The sergeant's opinion was based on his experience as a patrolman, his training and education while such, and from his observations at the scene. We believe it was error to permit such testimony as it amounted to no more than a guess or speculation. This is true because the observations made, the

facts existing at the scene, were not such that any scientific or expert knowledge shown to have been possessed by the sergeant, could be applied to them to make such determination. There were no skidmarks of any kind.

The sergeant has been a member of the patrol for 20 years with some three years out for service in the Navy. During that time he investigated from a thousand to fifteen hundred automobile accidents. He has attended three short courses on accident investigation at Iowa City. And he attended refresher courses each year for the last number of years. From his testimony, these courses in Iowa City and at the Police Academy in Des Moines are conducted by instructors from The Traffic Institute, Northwestern University. In testifying about these courses, he said:

"When I say physical demonstrations I do not mean that actual accidents are caused * * *. I mean we go out on a specified piece of ground and test different automobiles as far as skidmarks are concerned in relation to the known speed they are driven and calculations are made and come up with the speed the car was actually driven at the time they laid down the skidmarks."

Later he testified, "* * * the instructions we go through are one-car accidents and how to determine the speed from the damage we find and the distance traveled and the skidmarks that are available."

The sergeant also testified that on more than one occasion, two recently, he has observed the damage done in a one-car accident when he was in pursuit and knew the speed.

In "Judge and Prosecutor in Traffic Court", published by The American Bar Association and The Traffic Institute, Northwestern University, Professor James Stannard Baker, Director of Research, The Traffic Institute, Northwestern University, in chapter 10 deals with skidmarks as evidence of speed. At page 191 he says, in part, under the heading "Skidmarks Account for Only Part of the Speed":

"Suppose a car strikes something after leaving skidmarks 90 feet long. Speed is lost in the impact. An expert can reconstruct some of those accidents, if he is experienced, by allow-

ing for the speed loss in doing certain kinds of damage. He can estimate speed pretty well for a certain type of vehicle meeting an object head-on from a certain speed. But police officers are not usually experienced in that. They ordinarily overestimate.

"We can also compute how much speed was lost by the sliding of a car which was struck. We must know the weight of the car and the coefficient of friction of that car with the pavement. From this we figure the amount of energy that would be required to slide the car on pavement. Then we can compute how much speed another car would have to have to do that work. That is, of course, a job for an engineer."

At page 192: "The calculation of speeds from skidmarks is done by a formula when the distance of the slide and the drag factor of the pavement have been determined. This formula is:

"Speed equals 5.5 times the square root of the product of distance times drag factor."

We do not find that Professor Baker at any place states the speed of an automobile can be determined from the amount of damages to objects struck without more.

■■ Sergeant Jackley testified in detail as to the conditions at the scene on which he based his opinion. He arrived about 30 minutes after the accident. There were tire marks in the loose gravel where the car left the roadway at the start of the slight curve to the south. The car went into the ditch, through the fence at that point running northeast-southwest, knocking down two or three posts including a corner post with a north-south fence and part of the east-west fence west of the corner post. A guy wire to a power line pole was broken at the insulator. In excess of 50 feet of fence was torn out. The car had rolled over two or three times from the marks in the pasture where it came to rest. At least five, and possibly more, fence posts were broken off. The corner post was eight inches in diameter, the others six, they were in fair to good condition. The car came to rest on its side facing south 146 feet west of the place it left the road and 28 feet from the traveled portion of the road. The condition of the car was shown in a picture taken at the scene. As above stated, there were no skidmarks.

Bearing on this question plaintiff cites to us our point-of-

impact and manner-of-impact cases, Long v. Gilchrist, 251 Iowa 1294, 105 N.W.2d 82; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836; and Brower v. Quick, 249 Iowa 569, 577–580, 88 N.W.2d 120. The Brower case deals with the movement of the rear end of the car following the impact. He also cites Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646, and Roberts v. Koons, 230 Iowa 92, 296 N.W. 811, as well as a number of cases in which the expert opinion was based on skidmarks. We do not believe the skidmark cases in any way assist us here other than to demonstrate the need of such information as a basis for the opinion. The Grismore case does not involve automobile speed. It simply holds that an opinion by a qualified expert on a proper subject is not objectionable because it invades the province of the jury, i.e., passes on the ultimate fact question. The Roberts case does, but there we held the evidence of unqualified witnesses as to speed based on the condition of the vehicles was error. In the opinion we said, at page 96 of 230 Iowa, page 813 of 296 N.W.:

"But in any case such witness should be qualified and the facts upon which he bases his opinion should be sufficient to enable a witness so qualified to express an opinion which is more than a mere conjecture."

In each of our cases above cited the broad discretion vested in the trial courts is expressed. This discretion ceases where the record shows as a matter of law the witness is not qualified or the facts upon which the opinion is based are insufficient.

Only three cases have come to our attention where it may be said an expert witness has been allowed to give his opinion as to speed of an unobserved vehicle where the facts did not include skidmarks. They are, Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229, wherein a state patrolman was allowed to testify to the speed of a car as it rounded a curve in a mountain road based on the fact that only the left wheels of the car left any tire mark. He explained that it was indicative of greatly excessive speed because the centrifugal force in rounding the curve at such speed took considerable pressure off the right wheels which pressure was added to the left wheels making this

distinct mark. The officer in this case traveled this same road once a week for four years and on one occasion was in pursuit of a speeder and observed that at 55 m.p.h. the wheels on both sides left tire marks. In Clark v. Hiatt, 105 Ohio App. 402, 152 N.E.2d 701, a state highway patrolman was allowed to testify to the speed of a car, the opinion says, based on the physical facts he found at the scene. The case does not disclose skidmarks were found. In the same case an engineer testified to the speed the car was traveling to cover a certain distance in feet if the other car covered a named distance at a normal rate of speed. The Clark case was followed in McManus v. Buskirk, 183 N.E.2d 473 (Ohio, 1962), in the Court of Common Pleas. In the McManus case the opinion is strengthened somewhat by gouge marks in the pavement.

In Storbakken v. Soderberg, 246 Minn. 434, 436, 75 N.W.2d 496, 498–501, a consulting engineer, holding a Bachelor of Science degree in Civil Engineering and a teacher of "Analytical Mechanics of Moving Bodies" at the University of North Dakota, was allowed to testify to the speed of a car and truck at the point of impact based upon the law of conservation of momentum which theoretically determines the speed at which vehicles come together by calculation of factors, including the weight of the colliding vehicles and the distance traveled after impact. The hypothetical question asked included the fact all four wheels of one vehicle were sliding for a distance of 50 to 55 feet.

The Ohio cases cited cannot be reconciled with our holding if the physical facts considered in those cases did not include skidmarks. The facts in the Colorado case do not support the conclusion drawn. There is no suggestion of a scientific or mathematical background to qualify the witness. From his experience as shown he could only know the speed was in excess of 55 m.p.h. Anything over that appears to be a guess.

The same is true of Sergeant Jackley. The evidence shows no background to make any calculations as to speed without the aid of skidmarks. This does not cast any reflection upon the fine investigation work performed by him at the scene nor the valuable fact testimony he gave on the trial.

Our view is supported by the following authorities: Roberts v. Koons, 230 Iowa 92, 96, 296 N.W. 811, 813; State v. Robinson, 223 La. 595, 66 So.2d 515, 520; Bunton v. Hull, 51 N. M. 5, 177 P.2d 168; Tyndall v. Harvey C. Hines Co., 266 N. C. 620, 39 S.E.2d 828; Huguley v. State, 39 Ala. App. 104, 96 So. 2d 315; Union Bus Lines v. Moulder, Tex. Civ. App., 180 S.W. 2d 509 (1944); Redding v. Independent Contracting Co., 333 S.W.2d 269 (Ky. 1960); Stephanofsky v. Hill, 136 Conn. 379, 71 A.2d 560, 562, 563; and Lombard v. Dobson, 16 App. Div.2d 1031, 230 N. Y. S.2d 47. We are not to be understood as holding that a properly qualified expert witness may not in any case express an opinion on speed in the absence of skidmarks.

II. Because of the error pointed out in Division I all defendants are entitled to a new trial. However, it is necessary to consider other matters urged by defendants to determine whether or not any of them are entitled to have their motion for judgment notwithstanding the verdict sustained.

Defendant Darrel contends the evidence is insufficient on the issue of reckless operation of the car by Dean. Without the opinion testimony of the patrolman, the evidence shows Dean drove two miles south of Grafton on a blacktop highway without any complaint or mishap and at a speed of not to exceed 55 m.p.h. On the question of speed the results could also be taken into consideration. He then traveled a mile and a quarter west on the gravel road to the point of going off the road. There is no evidence of his driving that mile and a quarter other than the testimony of the Colby boy riding in the front seat by the right-hand door. He testified that at no time was the speed in excess of 55 m.p.h. He was quite sure Dean slowed down as he approached the curve. In describing how the accident happened, he said:

"Well, we were going down the road, I was talking with George and the first thing I know I looked up and I seen the curve coming and from there on we just didn't go around it, I mean the car just seemed to, I don't know, it seemed to be some sliding, if Dean tried to hold it on the road or what, but it just went off, started hearing a lot of noise."

He believed it was sliding some while still on the road.

This is all the evidence up to the point of going off the road. In addition to the sergeant's testimony of the scene, a dead-end sign facing a road from the south made of four by fours was broken off and plaintiff and a Wahl boy were thrown from the car. Plaintiff was thrown 30 feet west of the point where the car came to rest, the Wahl boy was 15 feet north of plaintiff. Dean's injuries were such he did not recall the accident or what took place as they traveled on the gravel road. It is undisputed that Dean did not have a driver's license or a school or learner's permit, and that he had never before driven on any highway. His experience was limited to driving his father's pickup truck, tractor and other farm machinery on his father's farm. In this regard the jury could properly find he had the experience of the average Iowa farm boy of his age. The accident happened at 9:40 p.m. With normal headlights the range of visibility was from 500 to 1000 feet. There is an incline to the west about 1000 to 1200 feet east of the scene. The roadway is level at the scene.

Our definition of reckless operation as used in section 321.494 has remained constant through the years. In Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577, we quoted with approval the following instruction: " 'recklessness means more than want of ordinary care. It must be shown that the operator of the vehicle used no care, coupled with a disregard for consequences, and to constitute recklessness, the acts must be such as to manifest a heedless disregard for or indifference to the rights of others. It requires actual knowledge of an existing danger or the presence of danger so obvious that the operator should have knowledge of it and proceeded without heed or concern for the consequences, and that the conduct of the operator of the vehicle is such that the consequences of his actions are such that the injury is a probability rather than a possibility. * * *.' "

See also Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 56; Allbee v. Berry, 254 Iowa 712, 119 N.W.2d 230; Wilcox v. Hilligas, 254 Iowa 204, 209, 117 N.W.2d 42, 44; Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858; and citations in each of these cases.

Our question is, from the evidence presented, viewed in the light most favorable to the plaintiff, can reasonable minds conclude there was recklessness?

In Siesseger v. Puth, 216 Iowa 916, 925, 248 N.W. 352, 357, we considered briefly the inexperience of the driver in relation to reckless operation. The defendant was 46 years of age, he had owned the car two and a half months and had driven about 2400 miles. The other evidence showed defendant was driving on a good gravel road 30 to 32 feet wide at 55 m.p.h. on a downgrade for about a quarter to a half mile from the place of the accident. The car was weaving from side to side and went faster and faster for a half mile before it went into the ditch. Defendant admitted he was probably driving too fast, that the car started to weave and he stepped on the gas instead of the brake. The car went off the road on the wrong side. We there held a jury question was presented on reckless operation. In part we said: "* * *; but from the manner in which he was driving, considering his inexperience, and his violation of the speed laws, might not the jury find that he was proceeding without heed of, or concern for consequences, and in such a manner that it implied no care coupled with a disregard for consequences?"

In no other case have we considered the driver's inexperience on this question. That fact in the Puth case was considered along with the manner of driving.

In the case at bar there is no evidence of the manner in which Dean was driving except as may be inferred from the results. There is no showing as to the course of the car, other than it went off the road on the right-hand side. From this it may be inferred Dean failed to keep a proper lookout and did not see the curve in time to turn with it. This is evidence of negligence only, in failing to keep a proper lookout and in failing to have the car under control. In recent cases we held running off of a straight roadway while kissing a girl friend, Wilcox v. Hilligas, 254 Iowa 204, 117 N.W.2d 42, and while momentarily looking to the rear, Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858, did not constitute recklessness. In McBride v. Dexter, 250 Iowa 7, 16, 92 N.W.2d 443, 448, a case

heavily relied on by defendants, we held running off of the highway did not present a jury question on recklessness.

The McBride case and the one at bar are quite similar. The fact differences between them are: (1) The driver in the case at bar is unlicensed and inexperienced, this is his first trip on the highway as a driver. This factor was not present in the McBride case. (2) In this case the roadway was gravel, there was loose gravel sufficient to show the imprint of the tires as the car left the road, in McBride the roadway was 24-foot pavement. (3) In this case there was no warning sign of the approach to a curve, in McBride there was such a sign. In other respects the cases are similar. In each it is necessary to infer recklessness from the results. In McBride we said, "We see nothing more than a mere possibility of the existence of facts from which an inference of recklessness might be drawn." That statement is applicable here.

■ If an inference of recklessness can be drawn in this case it must be from the fact of Dean's inexperience, and not from his conduct on the highway. We do not think such inference can fairly be drawn. The most that can be said is that it is negligence. Inexperience does not show no care, coupled with disregard for consequences, neither does it show that injury is the probable result of the driving, nor does it constitute knowledge on the part of Dean of existing danger or of danger of which he should be cognizant. Mitrovich v. Pavlovich, 61 Nev. 62, 114 P.2d 1084.

III. Plaintiff pleaded, in separate divisions, defendants Harold and Lucille knowingly permitted Dean to drive without having a license in violation of section 321.219, and that they permitted him to drive knowing he was an inexperienced and incompetent driver. The trial court submitted these two propositions as separate specifications of negligence, proof of either being sufficient. Defendants do not complain of this, or that either specification will not support recovery. Those matters are not before us.

■ These defendants do complain there was insufficient evidence of proximate cause as to them. They contend plaintiff must prove the absence of a driver's license on the part of Dean

was a proximate cause or that the inexperience of Dean in driving was a proximate cause, that it must be shown in the area in which Dean was incompetent, i.e., inexperience.

As to the first they are mistaken, as to the second the evidence was such the jury could properly find the reason Dean drove off the road instead of turning was due to inexperience. Inexperience covers the whole field of negligence in the operation of a motor vehicle. It is not similar to a situation where a person is charged with entrusting a car to a habitual drunkard and the accident complained of occurred while the driver was perfectly sober.

Returning to the absence of the driver's license on the part of Dean, that is not what the parents are charged with, they are charged with permitting him to drive knowing he does not have a license. This is a violation of section 321.219. It provides:

"No person shall cause or knowingly permit his child or ward under the age of eighteen years to drive a motor vehicle upon any highway when such minor is not authorized hereunder or in violation of any of the provisions of this chapter."

Section 321.174 provides that no person except those exempt shall drive on the highways of this state unless they have a valid license.

Section 321.177 provides that a license shall not be issued to any person as an operator who is under 16 years of age except for the restricted school licenses provided for by section 321.194, and the instruction permits, section 321.180, for any person at least 14 years old.

These statutory provisions are enacted for the safety of the public. McCann v. Iowa Mutual Liability Insurance Co., 231 Iowa 509, 515, 1 N.W.2d 682. A violation of these provisions is negligence. They come within "* * * the manner, method of the use, and operation of vehicles on the highways, * * *" as used in Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554. The incompetency of the young driver is supplied by the statute, it is conclusively presumed. In the statute the legislature has recognized a fact that is common knowledge, that until they reach a certain age all children are incapable

of driving on the highways. When that age is reached is resolved by the statute.

■ When defendants permitted Dean to drive knowing he did not have a license they were negligent, a foreseeable result of this negligence was that Dean would drive negligently. The act of the parents continued to the time Dean was negligent and combined with it causing the injury.

As to the common-law specification of permitting an inexperienced and incompetent driver to drive, proximate cause is the same. The act of allowing the driving knowing the driver to be inexperienced or incompetent is negligence. It becomes a proximate cause when it combines with negligent acts of the driver causing the damage.

■ The trial court instructed, "* * * that one or more separate and distinct acts or omissions may constitute the proximate cause of an injury, and if such separate and distinct acts or omissions combine together to cause an injury and without either of which the injury would not have been caused, then each and all of such acts or omissions may combine to constitute the proximate cause of the injury." The court continued the instruction making the theory expressed applicable to the facts.

This instruction correctly states the applicable rule of proximate cause. Hardwick v. Bublitz, 253 Iowa 49, 111 N.W. 2d 309; Krausnick v. Haegg Roofing Co., 236 Iowa 985, 20 N.W. 2d 432, 163 A. L. R. 1413; Lockwood v. Wiltgen, 251 Iowa 484, 101 N.W.2d 724; Chenoweth v. Flynn, 251 Iowa 11, 99 N.W.2d 310; Williamson v. Eclipse Motor Lines, 145 Ohio St. 467, 62 N.E.2d 339, 168 A. L. R. 1356; Boland v. Love, 95 App. D. C. 337, 222 F.2d 27 (1955); Wery v. Seff, 136 Ohio St. 307, 25 N.E.2d 692; Repczynski v. Mikulak, 93 Ind. App. 491, 157 N.E. 464 (1927); Hopkins v. Droppers, 184 Wis. 400, 198 N.W. 738, 36 A. L. R. 1156; Walker v. Klopp, 99 Neb. 794, 157 N.W. 962, L. R. A. 1916E 1292; Shifflette v. Walkup Drayage and Warehouse Co., 74 Cal. App.2d 903, 169 P.2d 996; Gossett v. Van Egmond, 176 Ore. 134, 155 P.2d 304; Atkins v. Churchill, 30 Wash.2d 859, 194 P.2d 364; and Greenland v. Gilliam, 206 Okla. 85, 241 P.2d 384.

IV. In relation to their argument that it must be shown Dean's failure to have a license was the proximate cause defendants cite Ruckman v. Cudahy Packing Co., 230 Iowa 1144, 300 N.W. 320, and Mahowald v. Beckrich, 212 Minn. 78, 2 N.W.2d 569. These cases hold a driver without a license will not be deprived of his right of action for damage because of such failure, and where the negligence charged is the driver did not have an operator's license it will not support recovery and it is not a proper specification of negligence. We do not disagree with those cases. But they do not cover the situation here. In this case if the only negligent act alleged as to Dean was driving without a license those cases would be applicable. Here the parents are charged with permitting Dean to drive knowing he did not have a license, and that Dean did drive in a negligent manner, specifying lookout, control and speed. In this case the negligent act of the parents in permitting the driving must combine with negligent acts in the operation of the vehicle by Dean. The evidence shows both. Dean's acts took place while operating under the permission or while he was entrusted with the car. His acts are a proximate cause, and when combined with the parents' act such is a proximate cause. A sufficient showing of this was made for the jury to properly so find. See authorities cited in Division III and Vassillion v. Sullivan, 94 N. H. 97, 47 A.2d 115.

V. Defendants Harold and Lucille contend the evidence of Dean's incompetency and inexperience was insufficient to create a jury question as to their knowledge of his incompetency and inexperience. They contend it must be based on prior acts of negligence or general reputation. First, Dean was too young to have an operator's license. He could, it is true, have had a restricted school license, section 321.194, or an instruction permit, section 321.180, but he did not, nor was he at the time operating within the purview of either of those sections. As pointed out, the statute has fixed the age. The parents also knew he had not previously driven on the highway and the extent of his training and experience in the operation of a truck and car on the farm. It is evident he could not have had previous highway accidents or gained a general reputation

for negligent driving. We think a jury question is made on the question of the parents' knowledge when it is shown that he is their son and his age is less than that at which he may obtain a license. His incompetency is fixed by statute. 60 C. J. S., Motor Vehicles, section 431(c), page 1063; Atkins v. Churchill, 30 Wash.2d 859, 194 P.2d 364; Wery v. Seff, 136 Ohio St. 307, 25 N.E.2d 692; and Smith v. Thomas, 126 Ind. App. 59, 130 N.E. 85, 88. This case is not controlled by the evidence necessary to show knowledge of incompetency of an adult. See Beardsley v. Ostrander, 254 Iowa 356, 362, 118 N.W.2d 61, 64.

 VI. Defendant parents insist that, if they were guilty of negligence in permitting Dean to drive, plaintiff was guilty of contributory negligence as a matter of law in riding with Dean because he also knew Dean did not have a license and was an inexperienced driver. If the evidence on this point unequivocally established plaintiff's knowledge we believe their position would be well taken. But all of the evidence on this point comes from Dean. He testified they were in school and 4-H work together and visited back and forth from one home to the other, that they talked about obtaining driver's licenses and driving, farm work, and that he, Dean, drove the tractor and truck around the farm. This may be all true, but the jury was not required to believe it. If they did they could properly find plaintiff guilty of contributory negligence as a matter of fact. If these same facts were admitted in plaintiff's case plaintiff would at least be in the position that if he did not know of Dean's lack of a license and incompetency, he should have. Plaintiff is not in the same position as Dean's parents, they cannot be heard to say they did not know his age or unlicensed status. He lived with them and was under their parental control. Plaintiff is not presumed to know Dean's age or his lack of a license and of experience.

In the cases cited by defendants we find, in Cambron v. Bartlett, 333 S.W.2d 764 (Ky. 1960), and Sargent v. Williams, 152 Tex. 413, 258 S.W.2d 787, knowledge on the part of the plaintiffs was established by their admissions; in Barker v. Reedy, 167 Pa. Super. 222, 74 A.2d 533, and McGrath v.

Nugent, 133 Neb. 237, 274 N.W. 549, it was held to be a jury question; in Troquille v. American Universal Insurance Co., 127 So.2d 590 (La. App. 1961), the plaintiff was a next door neighbor, she knew the driver did not have a license, that she had failed one driver's test, plaintiff in fact had attempted to teach the driver to drive and at the time of the accident they were driving to another town for the driver to take a driving test to obtain a license, and in Canzoneri v. Heckert, 223 Wis. 25, 37, 269 N.W. 716, defendants quote from page 721 of 269 N.W., "Their acquiescence in riding with the boy barred them from recovery against him, * * *." The persons referred to were adults, relatives and intimate family associates of the 15-year-old driver. None of these cases conflicts with our view of the evidence in this case. That evidence is not taken as true merely because it is undenied, see Meardon v. Iowa City, 148 Iowa 12, 16, 126 N.W. 939. Defendants do not argue plaintiff was guilty of contributory negligence in other respects.

VII. Defendant parents contend it was error to submit the case against them on the theory of their negligence combining with the negligence of Dean. They insist that because plaintiff was a guest in the car it is necessary for plaintiff to show the driver was reckless, section 321.494. In support of their position they cite Hardwick v. Bublitz, 253 Iowa 49, 111 N.W.2d 309; Krausnick v. Haegg Roofing Co., 236 Iowa 985, 20 N.W.2d 432, 163 A. L. R. 1413; and McHugh v. Brown, 50 Del. (11 Terry) 154, 125 A.2d 583. In the Hardwick case we decided the owner-brother, Darrel, could not be held liable for mere negligence under section 321.220, he was entitled to the benefit of section 321.494 because he was an owner of the car, thus requiring the showing of reckless operation by the driver. The simple difference here is the parents are not the owners of the vehicle and do not come within the protection afforded in section 321.494. Without the benefit of section 321.494 owners and drivers were liable for their negligent acts. In the same manner a negligent entrustor was liable for his negligent acts. Section 321.494 has not changed the liability of the negligent entrustor.

From the Krausnick case defendants argue because the

negligence of the entrustor must combine with the negligence of the incompetent driver a failure to apply the guest statute reckless-operation-of-the-driver standard would result in an odd situation, in that if recovery were had against the entrustor he would have a right of contribution from the negligent driver, thus allowing a recovery against the driver indirectly which could not be done directly by the injured guest because of section 321.494. We doubt if this is true, Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 833, 834, 835, 107 N.W.2d 682, 684, 685; and Yellow Cab Co. v. Dreslin, 86 App. D. C. 327, 181 F.2d 626, 19 A. L. R.2d 1001 (1950). But if it is it would not allow us to enlarge section 321.494.

The McHugh case does not quite reach this case. In that case the parents were the owners of the car driven by their minor son and the same result was reached as in Hardwick v. Bublitz, 253 Iowa 49, 111 N.W.2d 309. A statute similar to our section 321.219 was not under consideration, but a statute similar to section 321.220, one making the person who signed a minor's application for a license jointly and severally liable with the minor and a guest statute based on intentional or willful or wanton disregard of the rights of others.

 VIII. The parents also contend there is an insufficient showing as to Dean's negligence. The evidence shows he failed to make a turn, drove off the road, the car going into the ditch, through fences and overturning two or three times. This is evidence of failure to keep a proper lookout, of speed and of lack of control. See Miller v. Stender, 251 Iowa 123, 98 N.W.2d 338.

 IX. The plaintiff has been unconscious since the accident and his doctor testified, "He probably has some reflex response to pain stimulus but from the lower level than the top of his brain. * * * if you stimulate him painfully, he will withdraw, extremity on the leg. * * * we don't believe that he has memory and conscious awareness of pain such as you and I would have, that's about all I could say." The doctor further testified that he did not anticipate any improvement in the future. The plaintiff was brought in on a stretcher and exhibited to the jury. His mother testified that he had a little feeling

when touched. His stepfather, that he seems to have a little reaction.

The instruction on the issue of future pain was, in part, "If you find from the evidence there is a reasonable probability that plaintiff will in the future suffer pain * * *, and you should not allow any amount for this item unless you find that such suffering is not only possible but probable."

Defendants contend the submission of future pain and suffering was erroneous because there is no evidence plaintiff would suffer pain in the future. They do not complain of the language of the instruction. It is correct. Smith v. Pine, 234 Iowa 256, 260, 261, 12 N.W.2d 236. The instruction given safeguards defendants from speculation and conjecture on the part of the jury. However, the evidence does not show plaintiff will probably suffer conscious pain in the future. The evidence on this issue is not unlike that in Shuck v. Keefe, 205 Iowa 365, 371, 218 N.W. 31. Where past pain and suffering are claimed it has been denied during the time the injured party was unconscious. 25 C. J. S., Damages, section 62, page 548; Vanderlippe v. Midwest Studios, 137 Neb. 289, 289 N.W. 341, 349, and citations. Upon a retrial this issue should not be submitted.

X. Defendant parents' last complaint is that there was insufficient evidence that either of them knowingly permitted Dean to drive or entrusted the car to him. The evidence on this comes in as admission against interest made by each of them, Harold in a conversation with plaintiff's stepfather, Lucille with his mother. Concerning the conversation with defendant Harold, Mr. Bartz testified,

"* * * Then I asked him how it came he was driving Darrel's car and then he told me Darrel had brought his car back, Dean wanted to go to this 4-H meeting, he brought this car back and as he brought this car back, Dean said, 'I am going to take Darrel's car', and that's about the end of it."

Mr. Bartz was asked, "Q. Did he make any mention that he told Dean he couldn't take Darrel's car or anything to that effect? A. No."

This evidence was denied, but it shows that Harold knew Dean was going to take the car and he stood by making no move

to prevent an unlicensed and inexperienced driver under his parental control from using the car.

The evidence as to Mrs. Bublitz is stronger. Mrs. Bartz testified Mrs. Bublitz told her that Dean told her (his mother) he was going to take Darrel's car, and that she (his mother) told him to stay out of town. The evidence is sufficient to make a jury case against both parents. See Greenland v. Gilliam, 206 Okla. 85, 241 P.2d 384.

XI. The motion of Darrel for judgment notwithstanding the verdict should have been sustained because the evidence was insufficient to show reckless operation by Dean. For the error in the admission of the opinion testimony of Sergeant Jackley defendants Harold and Lucille Bublitz are entitled to a new trial. If on a retrial the evidence as to future pain and suffering is the same such issue should not be submitted.

The case is reversed as to defendant Darrel Bublitz with direction to sustain his motion for judgment notwithstanding the verdict; and is reversed and remanded as to defendants Harold and Lucille Bublitz.—Reversed and remanded.

All JUSTICES concur except HAYS and LARSON, JJ., who dissent as to Divisions III and IV.